# No. 6:25-CR-00120-ADA-1

## In the United States District Court
## Western District of Texas
## Waco Division

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DANY LEONARDO MAYORGA-GUTIERREZ,

*Defendant-Appellant.*

———————————

Appeal from the United States Magistrate Court
for the Western District of Texas

———————————

### BRIEF OF DEFENDANT-APPELLANT

———————————

MAUREEN SCOTT FRANCO
Federal Public Defender
Western District of Texas
510 Austin Ave, Suite 1200
Waco, TX 76701
Tel.: (254) 730-6300

Lewis Berray Gainor
Supervisory Assistant
Federal Public Defender

*Attorney for Defendant-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

### UNITED STATES v. DANY LEONARDO MAYORGA-GUTIERREZ,
### No. 6:25-CR-00120-ADA-1

The undersigned counsel of record certifies that the persons having an interest in the outcome of this case are those listed below:

1. **Dany Leonardo Mayorga-Gutierrez**, Defendant-Appellant;

2. **Margaret Leachman**, Acting United States Attorney;

3. **Mark Frazier**, Assistant United States Attorney;

4. **Maureen Scott Franco**, Federal Public Defender; and

5. **Lewis Berray Gainor**, Supervisory Assistant Federal Public Defender, who represents Defendant-Appellant in this Court.

This certificate is made so that the Judges of this Court may evaluate possible disqualification or recusal.

s/ Lewis Berray Gainor
LEWIS BERRAY GAINOR

*Attorney for Defendant-Appellant*

i

**STATEMENT REGARDING ORAL ARGUMENT**

Dany Leonardo Mayorga-Guttierrez requests oral argument. This appeal stems from a guilty plea without a plea agreement and raises issues of first impression regarding 8 U.S.C. § 1304(e) and 8 U.S.C. 1306(b). Accordingly, counsel believes that oral argument would benefit the Court.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ................................ i

STATEMENT REGARDING ORAL ARGUMENT ........................ iii

TABLE OF AUTHORITIES ............................................................. v

SUBJECT MATTER AND APPELLATE JURISDICTION ............ 1

STATEMENT OF THE CASE ......................................................... 3

BACKGROUND ............................................................................. 8

SUMMARY OF THE ARGUMENTS ............................................. 21

STANDARD OF REVIEW ............................................................. 23

ARGUMENTS AND AUTHORITIES ............................................ 24

CONCLUSION .............................................................................. 43

CERTIFICATE OF SERVICE ..... **Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

## Cases

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ........................................ 13

*McCarthy v. United States*, 394 U.S. 459 (1969)........................... 25

*Rosales-Mireles v. United States*, 585 U.S. 129 (2018) ................. 23

*United States v. Adams*, 961 F.2d 505 (5th Cir. 1992) ........... 25, 26

*United States v. Alvarado-Casas*, 715 F.3d 945 (5th Cir. 2013).... 39

*United States v. Ashburn,* 20 F.3d 1336 (5th Cir.1994) ................ 42

*United States v. Carreon-Ibarra*, 673 F.3d 358 (5th Cir. 2012)..... 39

*United States v. Castro-Trevino*, 464 F.3d 536 (5th Cir. 2006) ..... 23

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004).............. 41

*United States v. Dyer,* 136 F.3d 417 (5th Cir.1998)....................... 26

*United States v. Garcia-Paulin,* 627 F.3d 127 (5th Cir. 2010)  33, 37

*United States v. Hildenbrand*, 527 F.3d 466 (5th Cir. 2008) .. 24, 26

*United States v. Johnson,* 546 F.2d 1225 (5th Cir.1977)............... 25

*United States v. Marek,* 238 F.3d 310 (5th Cir.2001) .................... 26

*United States v. Mendez-Lopez*, 528 F. Supp. 972 (N.D. Okla. 1981)
............................................................... 29

*United States v. Owens*, 224 F. App'x 429 (5th Cir. 2007)....... 34, 38

*United States v. Palmer*, 456 F.3d 484 (5th Cir. 2006)...... 34, 38, 42

*United States v. Vonn*, 535 U.S. 55 (2002) .................................... 39

**Statutes**

18 U.S.C. § 3401(a) ................................................................. 1

18 U.S.C. § 3402 .................................................................... 1

28 U.S.C. § 636(a)(4) ............................................................. 1

8 U.S.C. § 1301 ..................................................................... 8

8 U.S.C. § 1302 ................................................................ 13, 15

8 U.S.C. § 1302(a) ................................................................. 8

8 U.S.C. § 1304(a) ................................................................ 28

8 U.S.C. § 1304(d) ....................................................15, 27, 28, 29

8 U.S.C. § 1304(e) ..........................................................passim

8 U.S.C. § 1305 ................................................................ 8, 36

8 U.S.C. § 1306 ................................................................ 8, 12

8 U.S.C. § 1306(a) ............................................................ 8, 32

8 U.S.C. § 1306(b) ..........................................................passim

Alien Registration Act of 1940 ............................................ 8, 9, 13

Immigration and Nationality Act of 1952 ................................. 8, 13

Immigration and Nationality Act of 1965 ................................... 15

**Other Authorities**

15 Fed. Reg. 574 ............................................................. 14, 29

15 Fed. Reg. 579-80 ............................................................. 15

17 Fed. Reg. 11469 .............................................................. 16

22 Fed. Reg. 9765 ................................................................. 15

76 Cong. Rec. 834 ................................................................. 12

8 C.F.R. § 264.1 ................................................................... 16

8 C.F.R. § 264.1(a) .......................................................... 16, 31

8 C.F.R. § 264.1(b) ............................................................... 31

86 Cong. Rec. 8344 ............................................................... 11

90 Fed. Reg. 11793 ......................................................... 20, 30

90 Fed. Reg. 8443 ................................................................ 19

Jonathan Weinberg, *Demanding Identity Papers*, 55 Washburn
  L.J. 197 (2015) .........................................................passim

Nancy Morawetz & Natasha Fernández-Silber, *Immigration Law
  and the Myth of Comprehensive Registration*, 48 U.C. Davis L.
  Rev. 141 (2014) ..................................................... 10, 17, 18

U.S. Attorney General, "General Policy Regarding Charging, Plea
  Negotiations, and Sentencing" (Feb. 5, 2025) .......................... 19

U.S. Citizenship & Immigration Services, *Policy Manual* 10, 17, 28

U.S. Customs and Border Protection "I-94 Automation" ........ 31, 36

USCIS "Form I-94, Arrival/Departure Record, Information for
  Completing USCIS Forms" ........................................... 31

USCIS, "Alien Registration Requirement," ............................... 20

**Rules**

Fed. R. Crim P. 11(b)(1)(B)-(F), (O) .................................... 22, 39, 40

Fed. R. Crim. P. 11 ............................................................... 38

Fed. R. Crim. P. 11(b)(1) .................................................... 2, 24, 39

Fed. R. Crim. P. 11(b)(3)...................................................................... 25

Fed. R. Crim. P. 58(g)(2)(B).................................................................. 1

## SUBJECT MATTER AND APPELLATE JURISDICTION

1. **Subject Matter Jurisdiction in the Magistrate Court**. This case arose from the prosecution of an alleged petty misdemeanor offense against the laws of the United States. The alleged offense occurred in the Western District of Texas. The Magistrate court had jurisdiction of the case under 18 U.S.C. § 3401(a) and 28 U.S.C. § 636(a)(4).

2. **Jurisdiction in the District Court**. This is a direct appeal from a final decision of a United States Magistrate Judge for the Western District of Texas, entering judgment of conviction in a criminal case. This Court has jurisdiction of the appeal under 18 U.S.C. § 3402.

Under Federal Rule of Criminal Procedure 58(g)(2)(B), a criminal defendant who wishes to appeal a Magistrate court judgment must file a notice of appeal with the clerk within 14 days after the judgment's entry. In this case, written judgment was entered on April 23, 2025, and Mr. Mayorga-Gutierrez timely filed his notice of appeal on May 6, 2025.

**ISSUES PRESENTED FOR REVIEW**

1. Did the Magistrate Judge err in finding there was a sufficient factual basis for a guilty plea to Failure to Personally Possess a Certificate of Alien Registration pursuant to 8 U.S.C. § 1304(e)?

2. Did the Magistrate Judge err in finding there was a sufficient factual basis for a guilty plea to Failure to Notify Change of Address pursuant to 8 U.S.C. § 1306(b)?

3. Did the Magistrate Judge err by failing to inform Mr. Mayorga-Gutierrez of his rights as required by Federal Rule of Criminal Procedure 11(b)(1)?

## STATEMENT OF THE CASE

Mr. Mayorga-Gutierrez was arrested on April 23, 2025, and charged with violating 8 U.S.C. § 1304(e) and 8 U.S.C. § 1306(b). ECF Doc. Nos. 1-2. The complaint alleges that on April 22, 2025, Mr. Mayorga-Gutierrez, "an alien, was found in the United States in Groesbeck, Limestone County, Texas." ECF Doc. No. 1. The complaint states that Mr. Mayorga-Gutierrez is a citizen and National of Nicaragua, who was previously paroled into the United States. *Id.*

The complaint further alleges that Mr. Mayorga-Gutierrez was required to be registered while in the United States and to carry any certificate of registration or receipt card on his person and that Mr. Mayorga-Gutierrez was required to notify the Attorney General in writing of any change of address and new address within ten days from such change. *Id.*

The complaint alleges that Mr. Mayorga-Gutierrez failed to "at all times carry with him and have in his personal possession any

certificate of alien registration or alien registration receipt card, []
in violation Title 8 United States Code, Sections 1304(e) and fail[ed]
to notify the Attorney General in writing of a new address and ad-
dress change within ten days [] in violation of Title 8 United States
Code, Section 1306(b)." *Id.*

On April 23, 2025, Mr. Mayorga-Gutierrez appeared before a
Magistrate Judge for his initial appearance. The Assistant United
States Attorney informed the Court that he had spoken with Mr.
Mayorga-Gutierrez "with the assistance of the interpreter and it
[was his] understanding [Mr. Mayorga-Gutierrez] wish[ed] to
plead." Transcript of record at 3. The AUSA informed the Magis-
trate Judge he would recommend a time-served sentence. *Id.*

The Magistrate Judge then advised Mr. Mayorga-Gutierrez
that he had the "right to remain silent and you do make a state-
ment, including any statements you make during this proceeding,
which is being recorded, those statements can be used against you

in future court proceedings." *Id.*at 4-5. Mr. Mayorga-Gutierrez confirmed he understood his right to remain silent. *Id.* at 5.

The Magistrate Judge then advised that he was charged with two counts in the complaint, "the first count is a violation of Title 8, Section 1304(e), and that's failure to personally possess your registration form to have it on you. And then, you're also charged with a second count, a violation of Title 8, Section 1306(b), and that's a failure to notify of a change of address. Both of those counts carry potential punishment of up to 30 days in custody, up to a $5,000 fine, and a $5 mandatory special assessment. So do you understand the charge against you and the potential punishment?" *Id.* at 7-8. Mr. Mayorga-Gutierrez confirmed that he understood and did not have any questions. *Id.* at 8.

The Magistrate Judge then appointed Mr. Mayorga-Gutierrez counsel upon the court's own motion, even though the court determined that Mr. Mayorga-Gutierrez was not entitled to counsel because the charges were Class C misdemeanors. *Id.* at 9-10. The

5

proceedings were not paused to allow Mr. Mayorga-Gutierrez the opportunity to speak with newly appointed counsel.

The following exchange then took place:

THE COURT: Finally, Mr. Mayorga-Gutierrez, as to the two counts against you, the first is violation of Title 8, Section 1304(e), and the second is violation of Title 8, Section 1306(b), do you have any questions about those counts or the potential punishment?

DEFENDANT MAYORGA-GUTIERREZ: No, sir.

THE COURT: All right. Now, in your case, Mr. Mayorga, because there are two counts, there's the possibility that the Court could impose sentences that run consecutively, meaning you would have to fulfill all the obligations on the first count before you start serving any time or fulfilling obligations on the second count. Do you understand that?

DEFENDANT MAYORGA-GUTIERREZ: Yes, sir.

THE COURT: All right. And as to Count 1, violation of Title 8, Section 1304(e), failure to personally possess a registration form, how do you wish to plead, guilty or not guilty?

DEFENDANT MAYORGA-GUTIERREZ: Guilty.

THE COURT: And as to violation of Title 8 – the second count violation of Title 8, section 1306(b) failure to notify of a change of address, how do you wish to plead, guilty or not guilty?

DEFENDANT MAYORGA-GUTIERREZ: Guilty.

*Id.* at 11-12.

The Magistrate Judge then asked if anyone threatened, forced or coerced Mr. Mayorga-Gutierrez in any way to plead guilty, to which he replied no. *Id.* at 12. The Magistrate Judge then asked if he was "pleading guilty freely and voluntarily" and if he was "pleading guilty because what's stated in the complaint is what [he] did and what [he's] pleading guilty to. *Id.* Mr. Mayorga-Gutierrez responded affirmatively to both questions. *Id.* at 12-13.

The Magistrate Judge then stated that he found "that in the complaint[] against [Mr. Mayorga-Gutierrez], there's a sufficient factual basis to support the pleas." *Id.* at 13.

The Magistrate Judge imposed a sentence of time served on each count. *Id.* at 14. The fine and the special assessment were remitted. *Id.*

On May 6, 2025, Mr. Mayorga-Gutierrez filed this appeal.

## BACKGROUND

More than 80 years ago, Congress passed the Alien Registration Act of 1940 (also known as the Smith Act). Years later, Congress incorporated the registration and fingerprinting requirements of this Act into the Immigration and Nationality Act of 1952 and codified the requirements in 8 U.S.C. §§ 1301–1306. These previously obscure provisions require, with some exceptions, every immigrant in the United States who is fourteen years of age or older, who has not been registered and fingerprinted under the Alien Registration Act of 1940, and remains in the United States for thirty days or longer to apply for registration and to be fingerprinted before the expiration of such thirty days. *See* 8 U.S.C. § 1302(a). The law punishes a willful failure to register as a criminal misdemeanor punishable by up to six months in prison. 8 U.S.C. § 1306(a). Those who have registered and have been issued a certificate of registration are required to carry such certificate at all times. 8 U.S.C. § 1304(e). Additionally, those who have registered are required to give written notice of any change of address within ten days, and failure to do so is a misdemeanor. 8 U.S.C. § 1305.

Notably, for decades, this 1940s-era "duty to register" that the government suddenly seeks to enforce was essentially defunct and

abandoned. Indeed, since the 1950s, there has been no way for many noncitizens to register at all.

### The Alien Registration Act

These criminal charges arise out of two provisions of the Alien Registration Act which have been largely dormant since the 1940s. The Alien Registration Act (also known as the 1940 Smith Act) was passed during World War II as a national security measure, intended to sus out and remove subversive foreign enemies living within the United States. *See* Alien Registration Act of 1940, 76 P.L. 670, 54 Stat. 670; *see also* Jonathan Weinberg, *Demanding Identity Papers*, 55 Washburn L.J. 197, 203 (2015) (collecting historical sources). The Act required all noncitizens in the United States, on pain of criminal penalties, to appear at local post offices to be registered and fingerprinted, and thereafter to notify the government of every change of address. *See* Weinberg, *supra*, at 203-04 (citing Alien Registration Act §§ 31, 32(b), 54 Stat. 670, at 673–74). Those who "willfully failed" to do so were subject to misdemeanor criminal penalties. *Id.*

The former Immigration and Naturalization Service (INS) established the Alien Registration Division and tasked it with the job of processing the registrations and changes of address.

Weinberg, *supra*, at 205. The agency established procedures and forms to permit noncitizens to comply with the registration requirements. Upon filling out a general registration form provided at a local post office, the noncitizen was issued form AR-3—a registration receipt that itself conferred no immigration status or benefit. *See* U.S. Citizenship & Immigration Services (USCIS), *Policy Manual*, Vol. 11, Part B, Chap. 1, *available at* https://www.uscis.gov/policy-manual/volume-11-part-b-chapter-1. About five million people registered in this way, following "an elaborate Department of Justice publicity campaign" educating the public about the new requirements, the system for complying, and the benefits of doing so. Weinberg, *supra*, at 204. As a part of that effort, the Attorney General encouraged noncitizens to register over radio broadcast, assuring them that those with "irregularity connected with their entrance" would "receive all consideration" for immigration relief if they registered. Nancy Morawetz & Natasha Fernández-Silber, *Immigration Law and the Myth of Comprehensive Registration*, 48 U.C. Davis L. Rev. 141, 157-58 (2014) (quoting U.S. Attorney Gen., Speech Over the Broadcasting Facilities of the Columbia Broadcasting System Station WJSV: Alien Registration and Democracy 3-4 (Dec. 21, 1940)).

The criminal penalties provided for in the Act were only for those who *willfully* failed to register—not for those who failed to do so due to lack of knowledge or understanding of the requirements of the Act. As one proponent explained: "Hundreds of thousands of aliens in this country will gladly comply with the provisions of this bill. From aliens of that type this country has nothing to fear; but those who are going to resort to fraud, and *willfully and knowingly refuse to register*, certainly should be dealt with more harshly[.]" 86 Cong. Rec. 8344 (statement of Sen. Russell), *available at* https://www.congress.gov/bound-congressional-record/1940/06/15/senate-section (emphasis added). Thus, the law was enacted with the clear intent that criminal penalties for not registering were reserved for those who acted willfully—meaning, with both *awareness* of their duty to register and *with intent to violate this duty* and/or defraud the government in doing so.

In fact, lawmakers raised this very issue in discussing how or if the term "willfully" relates to the term "failure," illustrating clear intent on this point:

> Mr. BROWN: Mr. President, I should like to make an inquiry of the Senator from Texas. I do not really know what the term "willful failure" means. It seems to me that the two words are contradictory. It seems to me that if a man tries to do something and fails to do it, it could not be called a willful failure.

Mr. CONNALLY: It would not be.

Mr. BROWN: It seems to me that language something like this—as I hastily put it together—would cover the situation: Any alien applying for registration and to be fingerprinted, who *with knowledge of such requirements*, fails or willfully refuses. Refusal contains in it the meaning of the word "willful"; but it seems to me that "failure" is to me the language could be made somewhat clearer.

Mr. MILLER: Mr. President, if the Senator will look at the bill on page 13, he will find in line 18, and also in line 21, and running through the entire section, that the expression "willfully fails" also means "willfully refuses." *Of course, a man cannot willfully refuse to do something about which he does not know anything. I believe the whole context of the section will meet the objection or suggestion made by the Senator*. . . .

Mr. CONNALLY: Let me suggest to the Senator from Michigan that to my mind "willfully," in law means with an evil intent, with an improper purpose. It is wholly distinguishable from "willingly." It means with some improper purpose and some illegal intent. I think it will be found that the law dictionary so defines it.

Mr. BROWN. Mr. President, what is really meant here, it seems to me, is that the alien, *with knowledge of the fact that there is such a requirement, fails to appear and be registered.*

76 Cong. Rec. 8346 (emphasis added), *available at* https://www.congress.gov/76/crecb/1940/06/15/GPO-CRECB-1940-pt8-v86-3-1.pdf.

Thus, the legislative history of § 1306 makes clear that the term "willfully" requires both a person's subjective awareness of their legal duty to register and their voluntary and intentional choice to violate that duty and break the law. The Supreme Court

even referenced this legislative history as central to understanding the law's meaning shortly after its passage, observing that aliens "can only be punished for *wilful* [sic] failure to register." *Hines v. Davidowitz*, 312 U.S. 52, 73 (1941) (emphasis added). The Court explained that "the Congressional decision to punish only wilful [sic] transgressions was deliberate rather than inadvertent is conclusively demonstrated by the debates on the bill." *Id.* at n.36. And, notably, when Congress re-codified this provision into the Immigration and Nationality Act (INA) in 1952, it made no change to the strict *mens rea* required of the failure-to-register crime. *Compare* 82 P.L. 414, 66 Stat. 163; 82 Cong. Ch. 477, § 266(a) (1952), *with* 76 P.L. 670; 54 Stat. 670; 76 Cong. Ch. 439, § 36(a) (1940). Thus, Congress gave no indication that it intended to change (much less dilute) this central *mens rea* element.

### *The Abandonment of Wartime Registration*

The registration system created by the Alien Registration Act became increasingly convoluted and inaccessible in the years following World War II. Because the task of implementing § 1302's registration requirements was outsourced to agency regulations from the outset, the law's substantive requirements have always

been dependent on the underlying regulatory scheme that happens to be in place at any given time.

Almost immediately following World War II—and the passing of the national security threat motivating noncitizen registration—INS began to dismantle its short lived, wartime universal registration efforts. In 1950 the INS stopped issuing the AR-3. *See* Decentralization of Functions, 15 Fed. Reg. 574, 579–80 (Feb. 2, 1950), *available at Federal Register: 1https://tile.loc.gov/storage-services/service/ll/fedreg/fr015/fr015022/fr015022.pdf.* Instead, it provided that if a noncitizen registered after his entry into the United States, he or she would receive an I-551 green card (if a lawful permanent resident) or a Form 257a or I-94 (if a lawfully admitted nonimmigrant). *Id.*; *see also* Weinberg, *supra*, at 208. Ultimately, the Alien Registration Division was eliminated and registration through post offices was canceled—with the agency amending its regulations in 1957 to delete any reference to post offices and providing instead that noncitizens could be registered by "[i]mmigration officers and any officer or employee of the United States selected by the Commissioner." *See* "Registration of Aliens in the United States: Forms and Procedure," 22 Fed. Reg. 9765, 9805-06

14

(Dec. 6, 1957), *available at* https://tile.loc.gov/storage-services/service/ll/fedreg/fr022/fr022236/fr022236.pdf.

In place of a standardized form and registration process, postwar regulations began to designate preexisting immigration documents, documents used for other purposes and generally available only to noncitizens with legal status, as the only permissible "registration forms" for § 1302 purposes. *See* "Registration and Finger-printing of Aliens in Accordance with the Alien Registration Act," 1940, 15 Fed. Reg. 579-80 (Feb. 2, 1950), *available at* https://tile.loc.gov/storage-services/service/ll/fedreg/fr015/fr015022/fr015022.pdf.

Furthermore, in 1952, Congress enacted the comprehensive immigration law revision known as the McCarran-Walter Act, which added the requirement that "[e]very alien in the United States who has been registered and fingerprinted under the provisions of the Alien Registration Act, 1940, or under the provisions of this Act shall be issued a certificate of alien registration or an alien registration receipt card in such form and manner and at such time as shall be prescribed under regulations issued by the Attorney General." Immigration and Nationality Act of 1965 § 264(d); *see also* 8 U.S.C. § 1304(d) (2012).

15

The law posed a problem, however, because it did not provide a route to registration for many people already in the country. *See* Weinberg, *supra*, at 210. The INS implemented regulations for the 1952 Act listing nine different documents that could be treated as an alien registration receipt card. *Id.* at 211; *see* Immigration and Nationality Regulations, 17 Fed. Reg. 11469, 11532–33 (Dec. 19, 1952) (setting out new 8 C.F.R. § 264.1). The list of prescribed registration forms is now listed in 8 C.F.R. § 264.1, and it designates twelve specific forms as permissible for § 1302 registration and, for each form, described the accompanying class of individuals who could submit the documents to be considered "registered." *See* 8 C.F.R. § 264.1(a). None are registration forms *per se*, but instead are forms used for other purposes that, once obtained, bestow upon the noncitizen the status of "registered" under § 1302 and its accompanying regulations. In other words, registration is an incidental benefit. Many of the forms are obscure, and the classes to which they apply exceptionally limited. *See, e.g.*, *id.* (designating "I-67 Inspection Record" issued to Hungarian refugees). At least one of the forms does not exist anymore. *Compare id*. (designating "I-181, Memorandum of Creation of Record of Lawful Permanent

16

Residence"), *with* USCIS, *Policy Manual*, Vol. 7, Part L, Chap. 2 ("Form I-181 is no longer in use.").

Crucially, until recently, the list did not include any "registration form" that could be filed by a person in the United States without authorization. Weinberg, *supra*, at 199. That was true for people who have been granted relief under the Deferred Action for Childhood Arrivals program, people with Temporary Protected Status, or others with deferred action. *Id.*

Thus, while §§ 1301–1306 seemingly creates a universal registration and carry requirement for all immigrants in the United States, the regulatory scheme does not function in that manner. Nor was it ever understood to function that way. *See* Morawetz & Fernandez-Silber*, supra*, at 172-73. For example, while the Alien Registration Act of 1940, as originally implemented, gave rise to a virtually universal registration requirement, by 1952, regulations plainly exempted various groups—for example, Canadians who were visiting for less than six months and workers in the Bracero program—from any registration requirements, even though there was no explicit authorization in the statute for those exemptions. *Id.*

Congress acquiesced to this regulatory erosion in the passage of §§ 1301–1306. When updating the registration laws in 1952, it would have been aware of the regulatory exemptions, but chose not to alter the law to eliminate those exceptions. *Id.* Rather, it added the carry requirement, which would have been subject to the same exemptions as the registration requirement. *Id.*

The language of 8 U.S.C. §§ 1301-1306, when read in conjunction with present day regulations and administrative systems, does not provide for anything near a uniform obligation to register and carry documents. *Id.* at 176. Rather, the registration and carry requirements are largely illusory. Most noncitizens in the United States are exempt from registration and carry requirements pursuant to statute, regulation, administrative design, and systemic inefficiencies. *See id.* at II.A.1.

### The Recent "Failure to Register" Prosecutions

Unsurprisingly, the Alien Registration Act's now-outdated misdemeanor provision proscribing *willful failure* to "register" has been largely dormant for 70 years. However, on January 29, 2025, President Trump issued an executive order, which directed the DHS Secretary, in coordination with the Attorney General, to take action to: "Immediately announce and publicize information about the

18

legal obligation of all previously unregistered aliens in the United States to comply with the requirements of [8 U.S.C. §§ 1301-06]," "[e]nsure that all previously unregistered aliens in the United States comply with [8 U.S.C. §§ 1301-06]," and "[e]nsure that failure to comply with the legal obligations of [8 U.S.C. §§ 1301-06] is treated as a civil and criminal enforcement priority." Executive Order 14159, "Protecting the American People Against Invasion" (Jan. 20, 2025), 90 Fed. Reg. 8443 (Jan. 29, 2025). On February 5, Attorney General Pam Bondi issued a memorandum directing federal prosecutors, in relevant part, to "pursue charges relating to criminal immigration-related violations"—specifically identifying § 1306 for enforcement, though only "where supported by evidence, and consistent with applicable law." U.S. Attorney General, "General Policy Regarding Charging, Plea Negotiations, and Sentencing" (Feb. 5, 2025).

DHS immediately recognized the problem with these directives. As the agency explained, the very class of individuals targeted for prosecution—i.e., those present in the country without authorization—"had no direct way to register and meet their obligation under INA 262." USCIS, "Alien Registration Requirement," https://www.uscis.gov/alienregistration (last reviewed May 29,

2025). Thus, in March, DHS published an Interim Final Rule ("IFR") creating a new general registration form, Form G-325R—the first such form since the 1950s. *See* "Alien Registration Form and Evidence of Registration," 90 Fed. Reg. 11793, 11795-96, 11800 (March 12, 2025). The IFR explained that following the issuance of the Executive Order, "DHS reviewed the registration regulations at 8 CFR part 264 and determined that it would be appropriate to designate a general registration form in addition to those already identified in the regulations." *Id.* at 11795. "Aliens who entered without inspection and have not otherwise been encountered by DHS lack a designated registration form." *Id*. Thus, the agency explained, "[t]his IFR fills the gaps in the regulatory regime by prescribing a registration form available to all aliens regardless of their status, in addition to the other forms already listed." *Id*. at 11796.

Without the benefit of notice and comment, that rule went into effect on April 11.

## SUMMARY OF THE ARGUMENTS

**I.  The factual basis was insufficient to support Mr. Mayorga-Gutierrez's guilty plea to Failure to Personally Possess a Certificate of Alien Registration pursuant to 8 U.S.C. § 1304(e).**

The factual basis for Failure to Personally Possess a Certificate of Alien Registration as alleged in the complaint did not establish that Mr. Mayorga-Gutierrez was ever issued a certificate of alien registration, and, therefore, he did not have a duty to personally possess any document pursuant to 8 U.S.C. § 1304(e). Additionally, even if Mr. Mayorga-Gutierrez's had a duty to carry his I-94, the factual basis does not establish that he was not carrying an electronic copy of his I-94.

The Court should, therefore, reverse Mr. Mayorga-Gutierrez's conviction, vacate his guilty plea, and remand to allow him to proceed to trial.

**II.  The factual basis was insufficient to support Mr. Mayorga-Gutierrez's guilty plea to Failure to Notify Change of Address pursuant to 8 U.S.C. § 1306(b).**

The factual basis for Failure to Notify Change of Address as alleged in the complaint did not establish that Mr. Mayorga-Gutierrez did not notify the Attorney General of his address change.

21

The Court should, therefore, reverse Mr. Mayorga-Gutierrez's conviction, vacate his guilty plea, and remand to allow him to proceed to trial.

### III.   The Magistrate court reversibly erred by failing to provide sufficient admonishments under Rule 11.

The Magistrate court did not comply with Federal Rule of Criminal Procedure 11's requirement to advise the defendant of his trial rights and that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Fed. R. Crim P. 11(b)(1)(B)-(F), (O). The error to fully ensure Mr. Mayorga-Gutierrez understood his rights before accepting his plea of guilty was plain under the language of Rule 11, and the error affected his substantial rights because, had Mr. Mayorga-Gutierrez been properly advised, he would not have entered the plea. The Court should reverse Mr. Mayorga-Gutierrez's conviction, vacate his guilty plea, and remand to allow him to plead anew or proceed to trial.

## STANDARD OF REVIEW

Because counsel did not object below, this Court's review is for plain error. "Under plain error review, [Mr. Mayorga-Gutierez] bears the burden to show that (1) there is an error; (2) the error is clear and obvious; and (3) the error affects his substantial rights." *United States v. Castro-Trevino*, 464 F.3d 536, 541 (5th Cir. 2006). "The relief for error is tied to a prejudicial effect," which requires Mr. Mayorga-Gutierez to show "a reasonable probability that, but for the error, he would not have entered the plea." *Id.* If all three prongs of plain error review are satisfied, this Court should exercise its discretion to correct the error if it "seriously affects the fairness, integrity or public reputation of the judicial proceedings." *Rosales-Mireles v. United States*, 585 U.S. 129, 135 (2018) (internal quotation marks and citation omitted).

## ARGUMENTS AND AUTHORITIES

Mr. Mayorga-Gutierez's convictions must be vacated because his guilty plea to both counts lacked an adequate factual basis, and the Magistrate court erred by failing to properly advise Mr. Mayorga-Gutierez under Rule 11(b)(1).

These errors were clear and obvious, and they also clearly prejudiced Mr. Mayorga-Gutierez, who undoubtedly would have proceeded to trial but for the errors. Accordingly, Mr. Mayorga-Gutierez respectfully requests that the Court vacate his conviction.

I.    **There was an insufficient factual basis for the guilty plea to Failure to Personally Possess a Certificate of Alien Registration pursuant to 8 U.S.C. § 1304(e).**

"If the factual basis is not sufficient as to any count, the conviction should be vacated, and the case remanded for further proceedings without consideration of any additional issues raised." *United States v. Hildenbrand*, 527 F.3d 466, 474 (5th Cir. 2008). As discussed below, there was an insufficient factual basis for Mr. Mayorga-Gutierez's convictions and sentences under 8 U.S.C. §§ 1304(e) and 1306(b), and therefore his convictions must be vacated.

"A guilty plea is insufficient in itself to support a criminal conviction." *United States v. Adams*, 961 F.2d 505, 508 (5th Cir. 1992). Instead, under Rule 11(b)(3), "the court must determine that there is a factual basis for the plea" before entering judgment. Fed. R. Crim. P. 11(b)(3). Rule 11(b)(3) seeks to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *McCarthy v. United States*, 394 U.S. 459, 467 (1969).

"The factual basis cannot be implied from the fact that the defendant entered a plea, but must appear on the face of the record and 'must be precise enough and sufficiently specific' to demonstrate that the accused committed the charged criminal offense." *Adams*, 961 F.2d at 508 (quoting *United States v. Johnson,* 546 F.2d 1225, 1226 (5th Cir.1977)). To meet this standard, the court must compare "(1) the conduct to which the defendant admits with (2) the elements of the offense charged in the indictment or information."

*United States v. Marek,* 238 F.3d 310, 315 (5th Cir. 2001) (en banc).

"When determining whether there is a factual basis for a guilty plea, inferences may be 'fairly drawn' from the evidence adduced after the acceptance of a guilty plea but before or at sentencing. *Hildenbrand*, 527 F.3d at 475 (citing *United States v. Dyer,* 136 F.3d 417, 425 n. 13 (5th Cir.1998)). "If sufficiently specific, an indictment or information can be used as the sole source of the factual basis for a guilty plea." *Adams*, 961 F.2d at 509.

Here, Mr. Mayorga-Gutierrez was merely asked if what was "stated in the complaint is what [he] did and what [he's] pleading guilty to," to which he replied yes. Transcript of record at 12-13. And the Court's only finding as to the factual basis for the plea was that it found that "in the complaint[]" that there was "a sufficient factual basis to support the plea[]" *Id.* at 13.

Section 1304(e) requires "[e]very alien, eighteen years of age and over, shall at all times carry with him and have in his personal possession any certificate of alien registration or alien registration

receipt card issued to him pursuant to subsection (d)." 8 U.S.C. §1304(e). Subsection (d) states "[e]very alien in the United States who has been registered and fingerprinted under the provisions of the Alien Registration Act, 1940, or under the provisions of this chapter shall be issued a certificate of alien registration or an alien registration receipt card in such form and manner and at such time as shall be prescribed under regulations issued by the Attorney General." 8 U.S.C. §1304(d).

There is no evidence that Mr. Mayorga-Gutierrez was ever issued a "certificate of alien registration or alien registration receipt card" pursuant to § 1304(d). Under the statutory scheme, "[t]he Attorney General and the Secretary of State jointly are authorized and directed to prepare forms for the registration of aliens under section 1301 of this title, and the Attorney General is authorized and directed to prepare forms for the registration and fingerprinting of aliens under section 1302 of this title. Such forms shall contain inquiries with respect to (1) the date and place of entry of the

alien into the United States; (2) activities in which he has been and intends to be engaged; (3) the length of time he expects to remain in the United States; (4) the police and criminal record, if any, of such alien; and (5) such additional matters as may be prescribed." 8 U.S.C. § 1304(a). The Attorney General is, thereafter, required to issue every person registered under these provisions a "certificate of alien registration or an alien registration receipt card." 8 U.S.C. § 1304(d).

But the federal government does not issue any single document called, or easily understood as, a "certificate of alien registration or an alien registration receipt card." *See* Weinberg, *supra*, at 199-200. Originally, those registered under the Alien Registration Act were issued an Alien Registration Receipt Card (Form AR-3). 11 USCIS, *Policy Manual*, B.1, Purpose and Background, *available at* [https://www.uscis.gov/policy-manual/volume-11-part-b-chapter-1](https://www.uscis.gov/policy-manual/volume-11-part-b-chapter-1). In 1946, the government began issuing different types of registration documents depending on the status of the person who

registered. *Id.* And in 1950 the INS stopped issuing the AR-3. *See*
Decentralization of Functions, 15 Fed. Reg. 574, 579–80 (Feb. 2,
1950).

By its plain terms, § 1304 applies only if a person was actually
issued a "certificate of alien registration or an alien registration re-
ceipt card." 8 U.S.C. § 1304(d); *see also United States v. Mendez-
Lopez*, 528 F. Supp. 972, 973 (N.D. Okla. 1981). "To hold [§]1304(e)
applicable to aliens who have never been issued any such documen-
tation would require the Court to disregard completely the phrase
'issued to him', stripping the precise language of the statute of its
plain meaning." *Id.* Section 1304(e) applies only to those immi-
grants who have registered and been issued a registration card. The
Court made no finding, and the complaint put forward no facts, es-
tablishing that Mr. Mayorga-Gutierrez was ever issued a certificate
of alien registration or an alien registration receipt card.

In fact, DHS seemingly recognized that no such certificate of
registration existed prior to April 11, 2025. In March, DHS

29

published as part of the IFR, that once an immigrant completes the new registration form, Form G-325R, a "Proof of Alien Registration" document will be posted to the immigrant's online USCIS account and will be available for download. "Alien Registration Form and Evidence of Registration," 90 Fed. Reg. 11793, 11795-96, 11800 (March 12, 2025). This rule went into effect on April 11. Mr. Mayorga-Gutierrez was arrested and convicted on April 23. There is nothing in the record to support a finding that Mr. Mayorga-Gutierrez was ever issued this "Proof of Alien Registration" or any other "certificate of alien registration or an alien registration receipt card."

The complaint seemingly suggests that Mr. Mayorga-Gutierrez's Form I-94 was his "certificate of alien registration or an alien registration receipt card." ECF Doc. No. 1. An I-94 is an Arrival/Departure record, which is issued to all aliens who are "admitted to the U.S.; adjusting status while in the U.S.; or extending their stay." USCIS "Form I-94, Arrival/Departure Record, Information

for      Completing      USCIS      Forms,"      *available      at*
https://www.uscis.gov/forms/all-forms/form-i-94-arrivaldeparture-
record-information-for-completing-uscis-forms (last visited May 22,
2025). "As of April 30, 2013, most Arrival and/or Departure records
are created electronically upon arrival." *Id.* As the CBP I-94 fact
sheet recognizes, while "U.S. CBP will continue to create an I-94
record for all travelers who require one, but the paper form will be
created in an electronic format and not provided to the traveler."
U.S. Customs and Border Protection "I-94 Automation," *available
at*      https://www.cbp.gov/sites/default/files/assets/documents/2016-
Mar/i-94-automation-fact-sheet.pdf.

The Code of Federal Regulations lists twelve specific forms as
permissible for registration, 8 C.F.R. § 264.1(a), and thirteen docu-
ments that serve as evidence of registration. 8 C.F.R. § 264.1(b).
While an I-94 is listed as both a form of registration and proof of
registration, this does not establish that an I-94 is "certificate of
alien   registration   or   an   alien   registration   receipt   card."

31

Furthermore, even if an I-94 is a "certificate of alien registration or an alien registration receipt card," Mr. Mayorga-Gutierrez likely would have been issued the form electronically. Since 2013, most I-94s have been created electronically and not provided to the individual. Section 1304(e) requires an individual to "carry with him and have in his personal possession" the registration card "issued to him." The card *issued* to Mr. Mayorga-Gutierrez would have been issued electronically. Thus, the statute by its plain language permits him to carry the electronic proof of registration that he was issued. There is nothing in the record, however, indicating that Mr. Mayorga-Gutierrez did not have the electronic version of his I-94 on his person.

There is nothing in the record that establishes a factual basis to find that Mr. Mayorga-Gutierrez committed the charged offense of 8 U.S.C. § 1304(e). The offense plainly applies only to those individuals who have registered pursuant to 8 U.S.C. § 1306(a), and the record does not establish that Mr. Mayorga-Gutierrez ever

registered. Further, Section 1304(e) only applies if a person was actually issued a "certificate of alien registration or an alien registration receipt card," and the record does not establish that Mr. Mayorga-Gutierrez was ever issued a certificate or receipt card. Finally, even if the I-94 is a certificate or receipt card, the record does not establish thar Mr. Mayorga-Gutierrez was not carrying it in the form it was issued—electronically. Thus, there was not a sufficient factual basis for the plea to 8 U.S.C. § 1304(e).

> a. **The error was plain, and it affected Mr. Mayorga-Gutierrez's substantial rights.**

Accepting Mr. Mayorga-Gutierrez's guilty plea to 8 U.S.C. § 1304(e) based on an insufficient factual basis was error, and the error was plain. "An error is plain, in this context, if it is 'clear or obvious' what the government must prove to establish the offense, and, notwithstanding that clarity, the district court accepts a defendant's guilty plea without an adequate factual basis." *United States v. Garcia-Paulin,* 627 F.3d 127, 132 (5th Cir. 2010). No facts established that Mr. Mayorga-Gutierrez was ever issued a

certificate of alien registration or that he did not possess an electronic copy of his I-94.

This obvious error affected Mr. Mayorga-Gutierrez's substantial rights. There is a reasonable probability that he would not have pleaded guilty but for the errors. As discussed further below, there is not a factual basis for either count of conviction, and it is reasonable that Mr. Mayorga-Gutierrez would have proceeded to trial had he been aware that his conduct did not actually fall within the definition of the charged crimes.

This Court should exercise its discretion to correct the error. A guilty plea based on facts insufficient to support a conviction "colors the fundamental fairness of the entire proceeding." *United States v. Palmer*, 456 F.3d 484, 491 (5th Cir. 2006) (cleaned up); *see United States v. Owens*, 224 F. App'x 429, 430 (5th Cir. 2007) (per curiam) (exercising discretion to correct error of accepting factually insufficient plea). Mr. Mayorga-Gutierrez's factually unsupported conviction seriously affects the integrity of judicial proceedings.

34

Given the important constitutional rights a defendant waives by pleading guilty, this Court should exercise its discretion to reverse to help promote the integrity or public reputation of judicial proceedings.

II.    **There was an insufficient factual basis for the guilty plea to Failure to Notify Change of Address pursuant to 8 U.S.C. § 1306(b).**

Likewise, there was an insufficient factual basis for Mr. Mayorga-Gutierrez's guilty plea to the count of Failure to Notify Change of Address. As with the previous count, Mr. Mayorga-Gutierrez was only asked if what was "stated in the complaint is what [he] did and what [he's] pleading guilty to," to which he replied yes. Transcript of record at 12-13. And the Court's only finding as to the factual basis for the plea was that it found that "in the complaints" that there was "a sufficient factual basis to support the plea[]" *Id.* at 13.

Section 1306(b) creates a Class C misdemeanor for *already-registered* noncitizens who fail to notify the Attorney General of an address change. 8 U.S.C. § 1306(b). The subsection provides that "[a]ny alien or any parent or legal guardian in the United States of

any alien who fails to give written notice to the Attorney General, as required by section 1305 of this title, shall be guilty of a misdemeanor." *Id*. Section 1305 provides that "[e]ach alien required to be registered under this subchapter who is within the United States shall notify the Attorney General in writing of each change of address and new address within ten days from the date of such change." 8 U.S.C. § 1305(a).

The complaint merely states that Mr. Mayorga-Gutierrez "was not in possession of his I-94 when encountered by ICE officers, nor has he notified the Attorney General in writing of his new address and address change within ten days." ECF Doc. No. 1. But the complaint contains no information as to how, or even if, it was determined that Mr. Mayorga-Gutierrez did not update his address. *See id.* An I-94 would not contain information as to the individual's address. U.S. Customs and Border Protection "I-94 Automation," *available at* https://www.cbp.gov/sites/default/files/assets/documents/2016-Mar/i-94-automation-fact-sheet.pdf. These conclusory

allegations do not establish a sufficient factual basis for Mr. Mayorga-Gutierrez's plea to 8 U.S.C. § 1306(b).

Therefore, there was an insufficient factual basis for Mr. Mayorga-Gutierrez's plea.

### a. The error was plain and it affected Mr. Mayorga-Gutierrez's substantial rights.

Accepting Mr. Mayorga-Gutierrez's guilty plea to 8 U.S.C. § 1306(b) based on an insufficient factual basis was error, and the error was plain. "An error is plain, in this context, if it is 'clear or obvious' what the government must prove to establish the offense, and, notwithstanding that clarity, the district court accepts a defendant's guilty plea without an adequate factual basis." *Garcia-Paulin,* 627 F.3d at 132. No facts established that Mr. Mayorga-Gutierrez did not update his address with the attorney general.

This obvious error affected Mr. Mayorga-Gutierrez's substantial rights. There is a reasonable probability that he would not have pleaded guilty but for the errors. There is not a factual basis for either count of conviction, and it is reasonable that Mr. Mayorga-

Gutierrez would have proceeded to trial had he been aware that his conduct did not actually fall within the definition of the charged crimes.

This Court should exercise its discretion to correct the error. A guilty plea based on facts insufficient to support a conviction "colors the fundamental fairness of the entire proceeding." *Palmer*, 456 F.3d at 491 (cleaned up); *see Owens*, 224 F. App'x at 430 (per curiam) (exercising discretion to correct error of accepting factually insufficient plea). Mr. Mayorga-Gutierrez's factually unsupported conviction seriously affects the integrity of judicial proceedings. Given the important constitutional rights a defendant waives by pleading guilty, this Court should exercise its discretion to reverse to help promote the integrity or public reputation of judicial proceedings.

III.    **The Magistrate Judge's admonishments were insufficient under Rule 11.**

The Magistrate court's plea colloquy did not comply with Federal Rule of Criminal Procedure 11 because it failed to ensure that Mr. Mayorga-Gutierrez understood his right to a trial and the potential immigration consequences of a plea before accepting his

guilty plea. Rule 11(b)(1) requires the court to personally address the defendant in open court, and the court must inform the defendant of, and determine that the defendant understands his rights before accepting a plea of guilty. These rights include the right to plead not guilty, the right to a trial; the right at trial to confront and cross-examine adverse witnesses; to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; the waiver of these trial rights if the court accepts a plea of guilty; and that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Fed. R. Crim P. 11(b)(1)(B)-(F), (O).

"Guilty pleas must be made intelligently and voluntarily because they involve the waiver of several constitutional rights." *United States v. Carreon-Ibarra*, 673 F.3d 358, 364 (5th Cir. 2012). Rule 11 "was designed to 'ensure that a guilty plea is knowing and voluntary, by laying out the steps a trial Judge must take before accepting such a plea.'" *United States v. Alvarado-Casas*, 715 F.3d 945, 949 (5th Cir. 2013) (quoting *United States v. Vonn*, 535 U.S. 55, 58 (2002)). Before accepting a plea of guilty, the court must inform the defendant of his to enter a plea of not guilty, the right to

39

trial, the right to confront and cross-examine adverse witnesses; to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses, and that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Fed. R. Crim P. 11(b)(1)(B)-(F), (O).

The Magistrate court failed to properly advise Mr. Mayorga-Gutierrez, and that error was clear and obvious. Mr. Mayorga-Gutierrez entered a plea of guilty to both counts of the complaint at his initial appearance. Before accepting Mr. Mayorga-Gutierrez's guilty plea, the Magistrate Judge did not advise him of his trial rights. *See* transcript of record. Nor did the Magistrate Judge advise that if Mr. Mayorga-Gutierrez was not a U.S. citizen he may be removed from the U.S., denied citizenship, and/or denied admission to the U.S. in the future. *See id.*

While the Magistrate Judge advised Mr. Mayorga-Gutierrez of the nature of the charges and the maximum possible penalty, he was never informed of his right to plead not guilty. *Id.* at 8-12. Nor was he informed of his trial rights. *See id.*

a. **The error was plain, and it affected Mr. Mayorga-Gutierrez's substantial rights**

Accepting Mr. Mayorga-Gutierrez's guilty plea without properly providing the Rule 11 admonishments was clear and obvious. This error also affected Mr. Mayorga-Gutierrez's substantial rights.

In order to reverse a conviction after a guilty plea on the ground that the court committed plain error under Rule 11, Mr. Mayorga-Gutierez "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Mr. Mayorga-Gutierez entered a plea of guilty to both charges in the criminal complaint at his initial hearing. At no point during the initial hearing did the Magistrate Judge inform Mr. Mayorga-Gutierez of his trial rights or the potential immigration consequences of his guilty plea. Further, while the Court did appoint counsel, counsel was appointed during the initial appearance and just moments before Mr. Mayorga-Gutierez entered his guilty plea. It does not appear that counsel was ever afforded the opportunity to speak to Mayorga-Gutierez.

There is a reasonable probability that, but for the errors, Mr. Mayorga-Gutierez would not have entered a plea of guilty. Mr.

Mayorga-Gutierez is a citizen of Nicaragua who only attended school through middle school. Transcript of record at 6. He entered a guilty plea at his first court appearance without having spoken to his counsel beforehand and without receiving many of the warnings required by Rule 11. Had Mr. Mayorga-Gutierrez been aware of his rights, he would not have entered the plea.

This Court should exercise its discretion to correct the error. "The integrity of the plea bargaining system is 'vital to our national system of criminal justice.'" *Palmer*, 456 F.3d at 491 (quoting *United States v. Ashburn,* 20 F.3d 1336, 1347 (5th Cir.1994)). "Maintaining that integrity requires diligently policing its failure to function properly." *Id.*

Here, Mr. Mayorga-Gutierrez entered a guilty plea without first being advised of his right to a trial and without being advised of the potential immigration consequences of his guilty plea. These circumstances—an unknowing and involuntary guilty plea because of a Rule 11 error—seriously affect the fairness, integrity, and public reputation of judicial proceedings and warrant reversal.

## CONCLUSION

For these reasons, the Court should reverse Mr. Mayorga-Gutierrez's convictions and remand for further proceedings.

Respectfully submitted.

MAUREEN SCOTT FRANCO
Federal Public Defender




Lewis Berray Gainor
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of June, 2025, I electroni-cally filed the Brief of Defendant-Appellant with the Clerk of Court using the CM/ECF system which will send notification of such filing to Mark Frazier, Assistant U.S. Attorney, via electronic mail.


Lewis Berray Gainor
*Attorney for Defendant*