IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA * | |
| * | |
| Plaintiff-Appellee * | |
| v. * | CRIMINAL NO. 6:25-CR-00120 |
| * | |
| DANY LEONARDO * | |
| MAYORGA-GUTIERREZ * | |
| * | |
| Defendant-Appellant * | |

**PLAINTIFF-APPELLEE'S BRIEF FOR THE UNITED STATES**

TO THE HONORABLE ALAN D ALBRIGHT:

The United States of America, by and through the United States Attorney for the Western District of Texas, files this its brief in response to Defendant Dany Leonardo Mayorga-Gutierrez' appeal from a final decision of United States Magistrate Judge Derek T. Gilliland, Western District of Texas entering a judgment of conviction against him in a criminal case and would show the Court as follows.

STATEMENT OF THE CASE

On April 22, 2025, Defendant Dany Leonardo Mayorga-Gutierrez was arrested at the Limestone County Community Supervision and Corrections Department (CSCD) for immigration violations. ECF 1. Defendant was paroled into the United States on December 12, 2022. *Id*. An I-94 was issued to him, listing his address within the United States as 12 E. 3rd St., New York, NY. *Id*. Defendant had been residing in Texas since at least December 31, 2023, the date he was arrested for Assault/Family Violence in Limestone County, Texas. *Id*. Defendant was not in personal possession of the I-94 that was issued to him previously. *Id*. Nor had Defendant reported his change of address from New York to Texas as required by law. *Id*.

Defendant made his initial appearance before United States Magistrate Judge Derek Gilliland the following day, April 23, 2025. ECF 5. At the beginning of the proceeding, the Court inquired of the Government if Defendant intended to enter a plea of guilty to the charges on that date. *Tr*. p. 3. The Government informed the Court that Defendant had indicated that he wished to plead guilty "today," and that a sentence of "time-served" would be recommended. *Id*. Because he was charged in two counts, the Government also agreed to recommend that the sentences in Defendant's case be served concurrently. *Id*. p. 13. The Government also agreed to "remit any fine, any special assessment associated with the case…"so that's clearly part of what the proposal is from the government to resolve the cases today." *Id*. p. 10.

After the Court informed Defendant of his legal rights, it inquired of the Government whether it should appoint counsel to represent Defendant. *Id*. p.8. The Government, in part, responded that Defendant "desire[d] to plead guilty," and that he "wished to dispose" of his case "today." *Id*.

After some discussion, the Court, believing it to be "better safe than sorry," appointed the Federal Public Defender to represent Defendant. *Id*. p. 9. The FPD, who was present in the courtroom during the entirety of these proceedings, knew that the recommended sentence upon Defendant's plea of guilty would be time-served, *Id*. p. 8-9. In fact, the FPD stated that she did "not mind standing by and representing" Defendant, "especially knowing that the government and the interpreter had spoken to [him] about what's going on." *Id*.

Moving to the arraignment, the Court asked Defendant whether he was pleading "guilty or not guilty?" *Id*. p. 12. He was asked if his plea was freely and voluntarily made. *Id*. He also acknowledged that he was pleading guilty to the charges contained in the criminal complaint because he was in fact guilty. *Id*. Prior to the initial appearance, Defendant, through a translator, acknowledged his right to a trial. ECF 7. After accepting Defendant's plea of guilty, finding that it was freely and voluntarily given, that

2

there was a sufficient factual basis to support the plea, the Court sentenced him to time served as to both counts, to run concurrently. *Id*. p. 13-14. No fine was imposed, and the special assessment was remitted. *Id*.

When defense counsel was asked at the conclusion of the proceeding if "anything else" needed to be addressed, counsel for Defendant replied "[n]othing I could think of". *Id*. p. 14-15.

The written judgment was entered on April 23, 2025. ECF 11. Defendant filed his notice of appeal on May 6, 2025. ECF 12.

Because this is a direct appeal from a final decision of United States Magistrate Judge Derek Gilliland, this Court has jurisdiction over the appeal. 18 U.S.C. § 3402; F.R.Cr.P 58(g)(2)(B). Moreover, the scope of the appeal is the same as an appeal to the court of appeals from a final judgment by a district court. That is, there is no trial *de novo* in this Court. F.R.Cr.P. 58(g)(2)(D).

On appeal, Defendant states that the factual basis did not establish that he was ever issued a certificate of alien registration and, therefore, had no duty to possess any such document pursuant to 8 U.S.C. 1304(e). (Def. Brief p. 21). To the extent that he was required to personally possess the I-94 issued to him, there was no evidence that he wasn't carrying an electronic copy of the same. *Id*. He also submits that the factual basis did not establish that Defendant did not notify authorities of his change of address, as required by 8 U.S.C. 1306(b). *Id*. Finally, Defendant states that United States Magistrate Judge Derek Gilliland did not properly admonish Defendant under F.R.Cr.P. 11 in that the magistrate did not advise Defendant of his trial rights or advise him of the possible immigration-related consequences of his plea of guilty. *Id*. p.22.

Since Defendant did not object to any of the alleged errors, the review is for plain error. Defendant cannot prevail as Defendant cannot demonstrate that any of the alleged errors affected his substantial rights. He cannot demonstrate that he would not have pled guilty but for the errors. In fact, the record

amply demonstrates that Defendant wanted to plead guilty at the initial appearance and dispose of the charges as quickly as possible, as the Government offered a time-served sentence, waived any fine and remitted any special assessment in exchange for a plea.

## BACKGROUND

More than 80 years ago, Congress passed, and President Franklin D. Roosevelt signed into law, the Alien Registration Act of 1940 (also known as the Smith Act). Years later, Congress incorporated the registration and fingerprinting requirements of this Act into the Immigration and Nationality Act of 1952 and codified the requirements in 8 U.S.C. §§ 1301–1306. Since that time, the law has required, with some exceptions, every alien now or hereafter in the United States who is fourteen years of age or older, has not been registered and fingerprinted under the Alien Registration Act of 1940, and remains in the United States for thirty days or longer to apply for registration and to be fingerprinted before the expiration of such thirty days. *See* 8 U.S.C. § 1302(a). Every alien required to be registered who is within the United States shall notify the Attorney General in writing of each change of address and new address within ten days of such change. See 8 U.S.C. § 1305(a). Since their codification in 1952, these laws have not been repealed, and they have not been held unconstitutional. On April 23, 2025, Defendant, a registered alien, was charged with failing notify his change of address as required by 8 U.S.C. § 1305(a)[1], in violation of 8 U.S.C. § 1306(b). He was also charged with failure to personally possess evidence of his alien registration, in violation of 8 U.S.C. 1304(e)[2].

---

[1] "Each alien required to be registered under this subchapter who is within the United States shall notify the Attorney General in writing of each change of address and new address within ten days from the date of such change and furnish with such notice such additional information as the Attorney General may require by regulation." § 1305(a).

[2] "Every alien, eighteen years of age and over, shall at all times carry with him and have in his personal possession any certificate of alien registration or alien registration receipt card issued to him pursuant to subsection (d). Any alien who fails to comply with the provisions of this subsection shall be guilty of a misdemeanor and shall upon conviction for each offense be fined not to exceed $100 or be imprisoned not more than thirty days, or both." § 1304(e).

The federal government has broad authority to regulate immigration, *see Toll v. Moreno*, 458 U.S. 1, 10–11 (1982), which has included the conditions of entry, movement within the country, and regulation of conduct before naturalization. *See Mathews v. Diaz*, 426 U.S. 67, 84 (1976) ("[I]t is the business of the political branches of the Federal Government, rather than that of either the States or the Federal Judiciary, to regulate conditions of entry and residence of aliens."). The Alien Registration Act of 1940, also known as the Smith Act, was enacted into law in June 1940 and put a duty on aliens to register and to be fingerprinted. *See* Alien Registration Form and Evidence of Registration, 90 Fed. Reg. at 47, 11793, 11796 (Mar. 12, 2025) (codified at 8 C.F.R. pt. 264.1).[3] Congress later incorporated the registration and fingerprinting requirements into the Immigration and Nationality Act of 1952 and codified the requirements in 8 U.S.C. §§ 1301–1306. *Id.* at 11793.[4]

Pursuant to 8 U.S.C. § 1302, it is the legal obligation of unregistered aliens (or previously registered aliens who turn 14 years old) who are in the United States for 30 days or longer to apply for registration and fingerprinting. Over time, DHS has designated several prescribed forms as registration forms or showing evidence of registration. *See* Alien Registration Form and Evidence of Registration, 90 Fed. Reg. at 47, 11794–97; *see also* 8 C.F.R. § 264.1(a)–(b). Twenty mechanisms, either forms or evidence of registration, have been codified to comply with the registration requirement set forth in § 1302(a): I-67

---

[3] The Smith Act was separate from "enemy alien registration" under the Alien Enemies Act of 1798, s*ee* 50 U.S.C. § 21–24 (codifying Alien Enemies Act), which granted authority to summarily detain and deport noncitizens from enemy countries and was invoked in World War II as the legal authority for interning noncitizens of Japanese, German, and Italian descent. *See Jacobs v. Barr*, 959 F.2d 313, 320–21 (D.C. 1992).

[4] While enacted in 1940, Congress has not repealed the statutory requirements, instead amending the statutory language on multiple occasions, and § 1306 continues to be a federal crime prosecuted along with other registration violations. *See* 8 U.S.C. § 1302 (showing amendments in 1986, 1988, and 1994); 8 U.S.C. § 1306 (showing amendment in 1996); *see also United States v. Sacco*, 428 F.2d 264 (9th Cir. 1970) (affirming conviction for failure to register under § 1306(a)); *United States v. Campos-Serrano*, 404 U.S. 293, 300–01 (1971) (discussing punishment for counterfeiting alien registration receipt card under § 1306(d)); *Martinez-Medina v. Holder*, 673 F.3d 1029, 1036 (9th Cir. 2011) (recognizing that "an alien's willful failure to register his presence in the United States when required to do so is a crime."); *United States v. Mendez-Lopez*, 528 F. Supp. 972, 973–74 (N.D. Ok. 1981) (charging defendant with 8 U.S.C. § 1304 for failure to have in his personal possession any certificate of alien registration receipt card); *United States v. Claudio-Becerra*, PO 08-2305, 2008 WL 11451356, *1 (D. N.M. 2008) (charging defendant with failure to register).

Inspection Record—Hungarian refugees; I-94 Arrival-Departure Record; I-95 Crewmen's Landing Permit; I-181 Memorandum of Creation of Record of Lawful Permanent Residence; I-485 Application for Status as Permanent Resident; I-590 Registration for Classification as Refugee; I-687 Application for Status as a Temporary Resident; I-691 Notice of Approval for Status as a Temporary Resident; I-698 Application to Adjust Status from Temporary to Permanent Resident; I-700 Application for Status as a Temporary Resident; I-817 Application for Voluntary Departure under the Family Unity Act, I-184 Alien Crewman Landing Permit and Identification Card; I-185 Nonresident Alien Canadian Border Crossing Card; I-186 Nonresident Alien Mexican Border Crossing Card; I-221 Order to Show Cause and Notice of Hearing (aliens against whom deportation proceedings are instituted); I-221S Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (aliens against whom deportation proceedings are instituted); I-551 Permanent Resident Card; I-766 Employment Authorization Document; I-862 Notice to Appear (aliens against whom removal proceedings are being instituted); and valid nonimmigrant DHS admission or parole stamp in a foreign passport. *See* 8 C.F.R. § 264.1(a)–(b); *see also* Alien Registration Form and Evidence of Registration, 90 Fed. Reg. at 47, 11794–97. Thus, many aliens in the United States already are registered, as required by law, through use of these mechanisms.

On January 20, 2025, the President issued the "Protecting the American People Against Invasion" Executive Order, which directed DHS to ensure that aliens comply with their long-established duty to register with the government under 8 U.S.C. § 1302 and to ensure that failure to comply would be treated as a civil and criminal enforcement priority. *See* Exec. Order No. 14159, 90 C.F.R. 18, 8443 (Jan. 20, 2025). On February 25, 2025, the Secretary of Homeland Security announced DHS would fully enforce the Immigration and Nationality Act (INA), including an alien's failure to register, explaining in a press release that failure to do so could result in a fine, imprisonment, or both. *See* https://www.dhs.gov/news/2025/02/25/secretary-noem-announces-agency-will-enforce-laws-penalize-

aliens-country-illegally (last visited August 25, 2025). This announcement was part of a broader national and international ad campaign, which included targeted ads to reach illegal aliens in the interior of the United States. *See* https://www.dhs.gov/news/2025/02/17/dhs-announces-ad-campaign-warning-illegal-aliens-self-deport-and-stay-out (last visited August 25, 2025).

In addition to the prescribed forms of registration provided for in 8 C.F.R. § 264.1(a)–(b), U.S. Citizenship and Immigration Services (USCIS) created a new registration form, G-325R, Biometric Information (Registration) that unregistered aliens could file online to comply with § 1302(a). *See* https://www.uscis.gov/alienregistration (last visited August 25, 2025). On February 25, 2025, in a DHS press release, aliens were directed to register using online Form G-325R at USCIS.gov. *See* https://www.dhs.gov/news/2025/02/25/secretary-noem-announces-agency-will-enforce-laws-penalize-aliens-country-illegally.[5]

On March 12, 2025, DHS published the interim final rule (IFR) that amended DHS regulations to designate G-325R as an additional registration method for unregistered aliens to comply with the statutory alien registration and fingerprinting provisions of § 1302. *See* Alien Registration Form and Evidence of Registration, 90 Fed. Reg. 47, at 11796 (Mar. 12, 2025) ("The IFR merely adds another method . . . for compliance with existing statutory registration requirements."). The IFR did not change the legal requirements of § 1302(a), but provided an additional method in which an unregistered alien could comply. *Id*. at 11793, 11796 ("This IFR fills the gaps in the regulatory regime by prescribing a registration form available to all aliens regardless of their status, in addition to the other forms already listed."); *see also Coalition for Humane Immigrant Rights v. DHS*, No. 1:25-cv-00943, 2025 WL 1078776, *1–2 (D.C. Dist. Ct. Apr. 10, 2025) (explaining historical mechanisms in which aliens could register). "The rule seeks

---

[5] Prior to form G-325R, aliens were able to create a USCIS online account to file other immigration forms online and track their immigration proceedings. *See also* https://www.uscis.gov/file-online/how-to-create-a-uscis-online-account (last visited August 25, 2025); https://www.uscis.gov/file-online/benefits-of-a-uscis-online-account (last visited August 25, 2025).

7

to better ensure that all aliens in the United States comply with such requirements. The rule does not impose any new registration or fingerprinting obligations separate from the obligations already contained in the INA." Alien Registration Form and Evidence of Registration, 90 Fed. Reg. at 47, 11796–97. Additionally, "[a]n alien who has previously registered consistent with 8 C.F.R. § 264.1(a), or an alien who has evidence of registration consistent with 8 C.F.R. § 264.1(b), need not register again, although such an alien is subject to ongoing change of address reporting requirements." *Id*. at 11796.

Following a 30-day comment period (as to whether a $30 fee should be charged, *id*. at 11793, 11796), the IFR became effective on April 11, 2025. However, the IFR provided that aliens "may register using the revised form G-325R Biographic Information (Registration) immediately." *Id*. at 11793. On April 11, 2025, DHS Secretary Noem reminded all noncitizens, regardless of status, that if they were present in the United States for 30 days or more as of April 11, 2025, without registration evidence, to register immediately. *See* https://www.dhs.gov/news/2025/04/11/secretary-noem-reminds-foreign-nationals-register-or-face-legal-penalties (last visited August 25, 2025). The Office of General Counsel at USCIS has confirmed online Form G-325R was available on February 25, 2025. Accordingly, unregistered aliens could create a USCIS online account and complete the online G-325R registration form more than thirty days prior to the IFR effective date.

Form G-325R did not activate the registration requirements under § 1302; those requirements have been in effect for decades. The recent IFR and Form G-325R simply provided an additional method—among others—for aliens to register.

ISSUES FOR REVIEW

1. Was the factual basis sufficient to support Defendant's plea of guilty to failing to personally possess his certificate of alien registration (8 U.S.C. 1304(e))?

2. Was the factual basis sufficient to support Defendant's plea of guilty to failing to notify his change of address (8 U.S.C. 1306(b))?

3. Was it error for the magistrate judge to fail to inform Defendant of his rights and the consequences of his plea pursuant to F.R.Cr.P. 11(b)?

## STANDARD OF REVIEW

Defendant did not preserve any of the issues raised in this appeal as he did not object to the sufficiency of the factual basis or to the sufficiency of the magistrate judge's plea colloquy. As Defendant concedes (Def. Brief 23), because he is attacking the factual basis for his guilty plea and the sufficiency of the plea colloquy for the first time on appeal, this Court's review is for plain error. *See United States v. Alvarado-Casas*, 715 F.3d 945, 951 (5th Cir. 2013). Requiring plain error "encourage[s] timely objections" and "reduce[s] wasteful reversals." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004). Requiring plain error also "respect[s] the particular importance of the finality of guilty pleas, which usually rest, after all, on a defendant's profession of guilt in open court, and are indispensable in the operation of the modern criminal justice system." *Id.* at 82-83. Mistakes in administering guilty pleas "can be corrected easily" in court. *United States v. Vonn*, 535 U.S. 55, 72 (2002). But "the defendant who just sits there when a mistake can be fixed cannot just sit there when he speaks up later on." *Id.* at 73.

Instead, showing plain error "demand[s] strenuous exertion." *Dominguez Benitez*, 542 U.S. at 82. "The defendant has the burden of establishing entitlement to relief for plain error" by "establishing each of the four requirements for plain-error relief." *Greer v. United States*, 593 U.S. 503, 508 (2021) (cleaned up). Those four requirements are: (1) an error that (2) was "clear or obvious, rather than subject to reasonable dispute"; (3) affected the defendant's "substantial rights"; and (4) "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (cleaned up). Meeting all four requirements is "difficult, 'as it should be.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *Dominguez Benitez*, 542 U.S. at 83 n.9).

## SUMMARY OF THE ARGUMENT

Because Defendant did not object in magistrate court to the factual basis for his guilty plea or the sufficiency of the plea colloquy administered by Judge Gilliland, he must now show plain error—that is a clear or obvious error that affected his substantial rights and that seriously affects the fairness and reputation of judicial proceedings. He has not done so.

Defendant has not shown that his plea lacked a factual basis. The court of appeals has repeatedly explained that on plain-error review, it will examine the entire record for facts supporting a guilty plea. Defendant, a registered alien, was paroled into the United States to an address in New York City, issued an I-94 Arrival/Departure record, a certificate of alien registration; somewhere along the way, Defendant moved to Texas and had been residing in this state since at least December 2023. He never updated this change of address or provided a new address within ten days as required by law. Moreover, Defendant was not in personal possession of his I-94 when encountered by ICE officials. These facts were sufficient to support his plea.

At a minimum, Defendant has not shown any obvious error. The facts presented at his plea hearing were not obviously insufficient to support his plea.

In any event, and most importantly, even if the factual basis were deficient, Defendant has not shown an effect on his substantial rights because he has not shown a reasonable probability that he would not have pleaded guilty but for the errors he now claims. By pleading guilty, Defendant, who was eager to dispose of his case at his initial appearance, received a time-served sentence on both counts, the sentences ran concurrently, no fine was imposed and the special assessment remitted.

As to the sufficiency of the plea colloquy's admonishments to Defendant regarding his trial rights and the immigration-related consequences of his plea, there was no plain error. Although the court did not admonish Defendant as to all of the trial rights identified in Rule 11, Defendant did acknowledge his right

to trial in a separate document. Defendant knew he could plead not guilty to the charges. Although Defendant was not admonished as to the immigration related consequences of his plea, he has not pointed to any adverse consequence resulting from his plea to two misdemeanors. Moreover, he was initially arrested and was in ICE custody for administrative immigration violations when these offenses were discovered. After his time-served sentence was imposed, he was eventually deported on those administrative immigration violations.

In any event, and most importantly, even if the plea colloquy was deficient, Defendant has not shown an effect on his substantial rights because he has not shown a reasonable probability that he would not have pleaded guilty but for the errors he now claims. By pleading guilty, Defendant, who was eager to dispose of his case at his initial appearance, received a time-served sentence on both counts, the sentences ran concurrently, no fine was imposed and the special assessment remitted.

Finally, Defendant has not shown any serious effect on the fairness, integrity, and public reputation of judicial proceedings. There is nothing unfair about affirming a conviction supported by the evidence.

ARGUMENTS AND AUTHORITIES

**I.       Defendant has not shown plain error regarding the factual basis for either count.**

Defendant has failed at every step of his difficult task. The record established a factual basis for his plea. At a minimum, any deficiency was not obvious, as plain-error review requires. Nor has Defendant shown the effect on his substantial rights and the serious effect on the fairness, integrity, or public reputation of judicial proceedings that plain-error review requires.

**A.       Defendant has not shown that his guilty plea lacked a factual basis.**

Federal Rule of Criminal Procedure 11(b)(3) requires that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). On plain-error review of a guilty plea's factual basis, this Court "take[s] a wide look, examining the *entire*

record for facts supporting the guilty plea and drawing reasonable inferences from those facts." *United States v. Nepal*, 894 F.3d 204, 208 (5th Cir. 2018) (cleaned up). With the entire record and those reasonable inferences in mind, this Court "determine[s] whether the conduct to which the defendant admits satisfies the elements of the offense charged." *United States v. Escajeda*, 8 F.4th 423, 426 (5th Cir. 2021).

The record in its entirety contained facts to support every element of his offenses. The elements of the offense for failure to notify of address change are that Defendant (1) is an alien (2) within the United States (3) required to be registered (4) fails to notify the Attorney General (now the Secretary of the Department of Homeland Security) in writing (5) of each change of address and new address (6) withing ten days from the date of such change. 8 U.S.C. § 1305(a) and 1306(b).

First, the record established that Defendant is an alien required to be registered under Title 8, Chapter 8, Subchapter II. *See* 8 U.S.C. §§1302, 1201(b): "Each alien who applies for a visa shall be registered in connection with his application…" 54 Stat. 70-676, Sec. 30: "No visa shall hereafter be issued to any alien seeking to enter the United States unless said alien has been registered and fingerprinted…" Sec. 31 "It shall be the duty of every alien now or hereafter in the United States…remains in the United states for thirty days or longer, to apply for registration and to be fingerprinted before the expiration of such thirty days." Defendant fits squarely within these definitions. ECF 1.

And in this instance, Defendant was registered within the meaning of 8 U.S.C. § 1302. As previously discussed, Defendant's I-94 is his registration and when issued to him is evidence of that registration. *See* 8 C.F.R. 264.1 (a) and (b). When Defendant entered the United States, he provided a residential address of 12 E. 3rd St., New York, New York, which was documented on the I-94. ECF 1. A copy of the I-94 was issued to him at that time. *Id*. An I-94 *is* evidence of an alien's registration, as defined by federal law. 8 C.F.R. 264.1 (a) and (b).

Second, the record established that Defendant failed to notify immigration authorities that his address had changed and failed to inform them of his new address. The affidavit appended to the complaint clearly indicated that Defendant was living in Texas at the time of his arrest, that he had never updated his address change from 12 E. 3rd St., New York, New York to Texas or provided his new address to the proper authorities. ECF 1. His failure to update his address as required was apparent from the facts set out in the complaint. *Id*.

Defendant asserts that there is no place for an individual's address on an I-94. But that is incorrect- the I-94 application requires at least one U.S. address. *See* https://i94.cbp.dhs.gov/payment/document-apply (Excel Template, v. 2.6) (last viewed August 26, 2025.)

The elements of the offense of failure to personally possess alien registration certificate or receipt are that Defendant (1) is an alien (2) registered as required (3) was issued a certificate or receipt of that registration (4) is at least eighteen years of age (5) failed to carry on his person such certificate or receipt. 8 U.S.C. § 1304(d) and (e).

First, the record established that Defendant is an alien required to be registered under Title 8, Chapter 8, Subchapter II. *See* 8 U.S.C. §§1302, 1201(b): "Each alien who applies for a visa shall be registered in connection with his application…" 54 Stat. 70-676, Sec. 30: "No visa shall hereafter be issued to any alien seeking to enter the United States unless said alien has been registered and fingerprinted…" Sec. 31 "It shall be the duty of every alien now or hereafter in the United States…remains in the United states for thirty days or longer, to apply for registration and to be fingerprinted before the expiration of such thirty days." Defendant fits squarely within these definitions. ECF 1.

Second, the record established that Defendant registered when he entered the United States and was issued evidence of that registration. He was issued an I-94, an arrival-departure record, on or about December 12, 2022. ECF 1. Completing an I-94 is one of the methods by which an alien may register

upon entry into the United States. *See* 8 C.F.R. §264.1(a). A copy of that form or certificate or receipt was issued to Defendant. ECF 1. The form constitutes evidence of registration. See 8 U.S.C. §264.1(b).

Third, the record established that Defendant, who was then found within the United States, failed carry on his person the evidence of his registration: the I-94 that was issued to him in December of 2022. ECF 1. A reasonable inference from the affidavit attached to the complaint, ECF 1, was that Defendant was not in possession of any form of the required documentation when he was encountered by ICE agents-electronic or paper. There is no dispute that Defendant was at least eighteen years of age at the time of this violation.

These facts were in the record when the district court accepted that plea. They were contained in the affidavit in support of the criminal complaint against him. ECF 1; *see United States v. Pitts*, 997 F.3d 688, 693 (6th Cir. 2021) (considering an affidavit attached to a criminal complaint in determining that a factual basis supported a guilty plea).

The criminal complaint was sufficient to support the plea of guilty.

**B.    Any deficiency in the factual basis for Defendant's guilty plea was neither clear nor obvious.**

At a minimum, any error in the magistrate court's entering judgment based on the record before it was neither clear nor obvious. It would not have been clear or obvious that those facts outlined in the affidavit for the criminal complaint did not support his plea. An error is not clear or obvious when the adequacy of the factual basis to sustain a particular element is "at least subject to reasonable debate." *United States v. Hicks*, 958 F.3d 399, 401 (5th Cir. 2020). And the adequacy of the factual basis presented at the plea hearing was at least subject to reasonable debate.

Recall that a court can draw reasonable inferences from the facts presented in support of a plea. *See, e.g.*, *Escajeda*, 8 F.4th at 426-27; *United States v. Oliver*, 630 F.3d 397, 415-16 (5th Cir. 2011). For example, in *Escajeda*, the court of appeals considered an oral factual basis for a drug-conspiracy plea.

14

*Escajeda*, 8 F.4th at 425-27. The oral factual basis alleged no agreement with anyone but a government informant, which would not have been enough to support the plea. *Id.* But the court of appeals inferred an agreement with persons other than that informant from circumstantial evidence including the cash, drugs, and weapons seized from a defendant and his statements that he had been selling drugs regularly and had no other job. *Id.* at 427. Similarly, the facts presented at Defendant's plea hearing provided enough to infer all elements of his failure to update his address and to personally possess proof of registration charges.

      **C.**     **Defendant has not shown an effect on his substantial rights because he has not shown a reasonable probability that he would not have pleaded guilty.**

To show an effect on his substantial rights based on a purported guilty-plea error, a defendant "must show a reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 83; *see also United States v. Vargas*, 23 F.4th 526, 527 (5th Cir. 2022). In assessing the probability that a defendant would not have pleaded guilty, a court is "informed by the entire record." *Dominguez Benitez*, 542 U.S. at 83."); *see also Vonn*, 535 U.S. at 59 ("[A] reviewing court may consult the whole record when considering the effect of any error on substantial rights."). A court should consider "other factors that loomed large in the decisional calculus," including the government's agreement to seek dismissal of other counts with higher maximum sentences. *Alvarado-Casas*, 715 F.3d at 954-55. And a court may consider whether the defendant has "point[ed] to record evidence that he was prepared and willing to go to trial." *Id.* at 954.

None of these considerations point to a reasonable probability that Defendant would not have pleaded guilty. Defendant never indicated that he was prepared to and willing to go to trial. In fact, the opposite was true. He wanted to resolve his case at the initial appearance. *Tr*. p. 3,8. By pleading guilty, he secured the government's agreement to run the time-served sentences concurrently, was not fined and all special assessments were remitted. *Id*., p. 10, 13.

Defendant would have gained nothing by going to trial, because the government had a strong case against him. In sum, Defendant had every incentive to plead guilty and little chance of an acquittal at trial. So, he has failed to show a reasonable likelihood that he would not have pleaded guilty.

### D. Defendant has not shown a serious effect on the fairness, integrity, or public reputation of judicial proceedings.

The rule allowing an appeals court to address a forfeited error "is permissive, not mandatory." *Greer,* 593 U.S. at 507 (cleaned up). If a defendant satisfies the other requirements of plain error, the appeals court "*may* grant relief if it concludes that the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Id.* at 508 (cleaned up, emphasis added). But this Court has said it will refuse to exercise this discretion when it "see[s] nothing unfair about" affirming a conviction. *Hicks*, 958 F.3d at 402. For example, in *Hicks*, this Court "c[ould] not say that upholding [a defendant's] conviction would adversely affect the public reputation of the judicial proceedings"—even if he had shown a prejudicial deficiency in the factual basis for his plea—because the record contained "substantial evidence" on the elements he challenged. *Id.*

Here, as in *Hicks*, the record amply supports Defendant's conviction. In these circumstances, holding him to his guilty plea would not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

## II. Failure to admonish appellant about his right to trial and to immigration consequences related to the plea were not plain error

Federal Rule of Criminal Procedure 11(b) guides judges in advising and questioning defendants during a plea proceeding. Although the magistrate did not inform Defendant of certain trial-related rights he would be waiving and did not inform him of possible immigration consequences by pleading guilty, there was no plain error. Any error resulting from the failure to inform Defendant of those rights and consequences was harmless because it did not affect his substantial rights, as required by F.R.Cr.P. 11(h).

Moreover, in determining whether the failure to inform affected Defendant's substantial rights, the entire record may be examined. *Dominguez Benitez*, 542 U.S. at 83.; *see also Vonn*, 535 U.S. at 59.

Defendant was asked if his plea was freely and voluntarily made. *Tr*. p. 12. No one threatened, coerced or forced Defendant into pleading guilty. *Id*. Defendant acknowledged that he was pleading guilty to the charges in the complaint because that is what he did and what he was pleading guilty to. *Id*. Although the court did not admonish Defendant as to all the trial rights identified in Rule 11, Defendant did acknowledge his right to trial and to counsel when he signed a consent to proceed before a magistrate. ECF 7. Defendant was made aware that he could plead not guilty to the charges, as Judge Gilliland asked him how he pleaded "guilty or not guilty" as to each count. *Tr*. p. 12.  Although Defendant was not admonished as to the immigration related consequences of his plea, he has not pointed to any adverse immigration consequence resulting from his plea to two Class C misdemeanors.

Moreover, Defendant was initially arrested for administrative immigration violations and was in ICE custody for these violations when these offenses were discovered. After his time-served sentence was imposed, he was eventually deported on those administrative immigration violations.

### A. Defendant has not shown an effect on his substantial rights because he has not shown a reasonable probability that he would not have pleaded guilty.

To show an effect on his substantial rights based on a purported guilty-plea error, a defendant "must show a reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 83; *see also Vargas*, 23 F.4th at 527. In assessing the probability that a defendant would not have pleaded guilty, a court is "informed by the entire record." *Dominguez Benitez*, 542 U.S. at 83.; *see also Vonn*, 535 U.S. at 59 ("[A] reviewing court may consult the whole record when considering the effect of any error on substantial rights."). A court should consider "other factors that loomed large in the decisional calculus," including the government's agreement to seek dismissal of other counts with higher maximum sentences. *Alvarado-Casas*, 715 F.3d at 954-55. And a court may consider

17

whether the defendant has "point[ed] to record evidence that he was prepared and willing to go to trial." *Id.* at 954.

None of these considerations point to a reasonable probability that Defendant would not have pleaded guilty. Defendant never indicated that he was prepared to and willing to go to trial. In fact, the opposite was true. He wanted to resolve his case at the initial appearance. *Tr*. p. 3,8. By pleading guilty, he secured the government's agreement to run the time-served sentences concurrently, was not fined and all special assessments were remitted. *Id*., p. 10, 13. His attorney apparently acknowledged that the time-served plea was what her client wanted to do, given the previous discussions he had with the Government. *Id*. p. 3, 9.

Defendant would have gained nothing by going to trial, because the government had a strong case against him. In sum, Defendant had every incentive to plead guilty and little chance of an acquittal at trial. So, he has failed to show a reasonable likelihood that he would not have pleaded guilty.

Defendant argues that if he has shown Rule 11 error, he has also shown a reasonable probability that he would not have pleaded guilty. (Def. Br. 41-42.) But a Rule 11 error, even an obvious one, does not by itself establish a reasonable probability that a defendant would not otherwise have pleaded guilty. *See, e.g.*, *Greer*, 141 S. Ct. at 2097; *Hicks*, 958 F.3d at 401-02; *Alvarado-Casas*, 715 F.3d at 954. Nor does a defendant's mere assertion that he would not have pleaded guilty. *See, e.g.*, *United States v. Monroe*, 629 F. App'x 634, 637 (5th Cir. 2015); *United States v. Cardona-Ramirez*, 358 F. App'x 562, 563 (5th Cir. 2009).

### B. Defendant has not shown a serious effect on the fairness, integrity, or public reputation of judicial proceedings.

The rule allowing an appeals court to address a forfeited error "is permissive, not mandatory." *Greer v. United States*, 593 U.S. at 507 (cleaned up). If a defendant satisfies the other requirements of plain error, the appeals court "*may* grant relief if it concludes that the error had a serious effect on the

fairness, integrity or public reputation of judicial proceedings." *Id.* at 508 (cleaned up, emphasis added). But this Court has said it will refuse to exercise this discretion when it "see[s] nothing unfair about" affirming a conviction. *Hicks*, 958 F.3d at 402. For example, in *Hicks*, this Court "c[ould] not say that upholding [a defendant's] conviction would adversely affect the public reputation of the judicial proceedings"—even if he had shown a prejudicial deficiency in the factual basis for his plea—because the record contained "substantial evidence" on the elements he challenged. *Id.*

Here, as in *Hicks*, the record amply supports Defendant's conviction. In these circumstances, holding him to his guilty plea would not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

## CONCLUSION

For all these reasons, this Court should affirm the judgment of the magistrate court.

        Respectfully submitted,

        JUSTIN R. SIMMONS
        United States Attorney

        */s/ Mark L. Frazier*

BY:    MARK L. FRAZIER
        Assistant United States Attorney
        800 Franklin, Suite 280
        Waco, TX 76701
        (254) 750-1580

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of September, 2025, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System, which will transmit notification of such filing to the following CM/ECF participant:

Lewis Berray Gainor
Supervisory Assistant Federal Public Defender

*/s/ Mark L. Frazier*
MARK L. FRAZIER
Assistant United States Attorney