# No. 6:25-CR-00120-ADA-1

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DANY LEONARDO MAYORGA-GUTIERREZ,

*Defendant-Appellant.*

*Appeal from the United States District Court for the Western District of Texas*

## REPLY BRIEF OF DEFENDANT-APPELLANT

MAUREEN SCOTT FRANCO
Federal Public Defender

Lewis Berray Gainor
Supervisory Assistant Federal
Public Defender
Western District of Texas
510 Austin Ave., Ste. 1200
Waco, Texas 76701
Tel.: (254) 730-6300
Fax: (254) 296-6440

*Attorney for Defendant-Appellant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..............................................................ii

INTRODUCTION .......................................................................... 1

ARGUMENTS AND AUTHORITIES ............................................. 4

I.   There was an insufficient factual basis for both counts of conviction. ................................................................................... 5

  a.    Section 1304(e) does not require a person to carry an I-94 on their person. ......................................................................... 6

  b.    There was an insufficient factual basis for the guilty plea to Failure to Notify Change of Address pursuant to 8 U.S.C. § 1306(b). ...................................................................................... 10

  c.    The magistrate judge's acceptance of the clearly insufficient factual basis affected Mr. Mayorga-Gutierrez's substantial rights and warrants correction.............................. 12

II.    The magistrate judge's admonishments were plainly insufficient under Rule 11 and it affected Mr. Mayorga-Gutierrez's substantial rights........................................................................ 14

CONCLUSION............................................................................ 16

CERTIFICATE OF SERVICE ..................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Kennedy v. Maggio*, 725 F.2d 269 (5th Cir. 1984)........................... 16

*United States v. Alvarado-Casas*, 715 F.3d 945 (5th Cir. 2013).... 13

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004).............. 15

*United States v. Palmer*, 456 F.3d 484 (5th Cir. 2006)............ 13, 16

**Statutes**

8 U.S.C. § 1301.................................................................... 1, 3

8 U.S.C. § 1302........................................................................ 3

8 U.S.C. § 1302(a) .................................................................... 1

8 U.S.C. § 1304(e)..............................................................passim

8 U.S.C. § 1305........................................................................ 1

8 U.S.C. § 1306.................................................................... 1, 3

8 U.S.C. § 1306(a) .................................................................... 1

8 U.S.C. § 1306(b) ........................................................4, 5, 10, 12

8 U.S.C. §1304(d) ................................................................ 7, 9

Alien Registration Act of 1940........................................................ 1

Immigration and Nationality Act of 1952 ....................................... 3

**Other Authorities**

15 Fed. Reg. 22....................................................................... 3

15 Fed. Reg. 574..................................................................... 3

8 C.F.R. § 264.1(b) .................................................................. 7

90 Fed. Reg. 11793 ............................................................. 4, 9

Jonathan Weinberg, *Demanding Identity Papers*, 55 Washburn
    L.J. 197 (2015) .............................................................. 2, 8

Nancy Morawetz & Natasha Fernández-Silber, *Immigration Law
    and the Myth of Comprehensive Registration*, 48 U.C. Davis L.
    Rev. 141, (2014) ............................................................... 8

U.S. Citizenship & Immigration Services, *Policy Manual* ............. 2

U.S. Customs and Border Protection "I-94 Automation" .............. 12

U.S. Customs and Border Protection "I-94 FAQs" ......................... 8

**Rules**

FED. R. CRIM. P. 11 .................................................................. 14, 15

Fed. R. Crim. P. 11(b)(1) ............................................................ 5

## INTRODUCTION

Congress passed the Alien Registration Act of 1940, the registration and fingerprinting requirements of which were later incorporated into the Immigration and Nationality Act of 1952 and codified the requirements in 8 U.S.C. §§ 1301–1306. These provisions require, with some exception, every immigrant in the United States who is fourteen years of age or older who remains in the United States for thirty days or longer to apply for registration and to be fingerprinted. *See* 8 U.S.C. § 1302(a). The law punishes a willful failure to register as a criminal misdemeanor punishable by up to six months in prison. 8 U.S.C. § 1306(a). Those who have registered and have been issued a certificate of registration are required to carry such certificate at all times. 8 U.S.C. § 1304(e). Additionally, those who have registered are required to give written notice of any change of address within ten days, and failure to do so is a misdemeanor. 8 U.S.C. § 1305.

When the Alien Registration Act of 1940 was first enacted, the Alien Registration Division processed the registrations and changes

1

of address. Jonathan Weinberg, *Demanding Identity Papers*, 55 Washburn L.J. 197, 205 (2015). The agency established procedures and forms to permit noncitizens to comply with the registration requirements.

Upon filling out a general registration form provided at a local post office, the noncitizen was issued form AR-3—a registration receipt that itself conferred no immigration status or benefit. *See* U.S. Citizenship & Immigration Services (USCIS), *Policy Manual*, Vol. 11, Part B, Chap. 1, *available at* https://www.uscis.gov/policy-manual/volume-11-part-b-chapter-1. The registration system, however, began to break down almost immediately. The Alien Registration Division was tasked with recording the registrations and changes of address, but the INS disbanded the division in 1944, assigning its functions to other offices, concluding "it was impossible to maintain a file of aliens' address cards with any degree of accuracy." Weinberg, *supra*, at 205.

While the Alien Registration Division was disbanded, the registration requirements were codified in the Immigration and

2

Nationality Act of 1952, and the task of implementing the Act's registration requirements were outsourced to agency regulations. In 1950 the INS stopped issuing the AR-3. *See* Decentralization of Functions, 15 Fed. Reg. 574, 579–80 (Feb. 2, 1950). In place of a standardized form and registration process, preexisting immigration documents were designated as the only permissible "registration forms" for § 1302 purposes. *See* "Registration and Fingerprinting of Aliens in Accordance with the Alien Registration Act, 1940," 15 Fed. Reg. 22, 579-80 (Feb. 2, 1950).

Thus, while §§ 1301–1306 seemingly creates a universal registration and carry requirement for all immigrants in the United States, the regulatory scheme does not function in that manner. Following President Trump's executive order directing the Department of Homeland Security to treat the failure to comply with the legal obligations of §§ 1301-1306 as an enforcement priority, DHS created a general registration form, which allows, for the first time, immigrants who entered without inspection to register. "Alien Registration Form and Evidence of Registration,"

3

90 Fed. Reg. 11793, 11795-96 (March 12, 2025). The form went into effect on April 11, 2025.

Mr. Mayorga-Gutierrez was arrested on April 22, 2025. ECF Doc. No. 1.[1] He was charged with failure to provide written notice of a change of address within ten days in violation of § 1306(b) and failure to have in his possession his certificate of alien registration or alien registration receipt card in violation of § 1304(e), and he entered a plea of guilty at his initial court appearance.

## ARGUMENTS AND AUTHORITIES

Mr. Mayorga-Gutierrez's conviction must be vacated for two reasons. First, there was not a factual basis to support either count of conviction. Mr. Mayorga-Gutierrez was convicted of failing to personally possess a certificate of alien registration, but there is nothing in the record establishing he was ever issued such a certificate. The government's argument that an I-94 is a certificate of alien registration is unavailing. Additionally, Mr. Mayorga-Gutierrez was convicted of failing to change his address, but the

---

[1] The ECF document number refers to documents filed in the misdemeanor case No. 6:25-mj-00114-DTG. Mr. Mayorga-Gutierrez cites the government's brief, document 4 in case number 6:25-cr-00120-ADA as "Gov't Br."

record fails to establish how it was determined that Mr. Mayorga-Gutierrez did not change his address. Accepting his plea was obvious error, affected Mr. Mayorga-Gutierrez's substantial rights, and warrants correction.

Second, the government concedes that the magistrate court obviously erred by failing to properly advise Mr. Mayorga-Gutierrez of his trial rights and immigration consequences under Rule 11(b)(1). The government's arguments that these omissions did not affect Mr. Mayorga-Gutierrez's substantial rights ignores that he was not guilty of either of the offenses charged. Had he known about his trial rights, he would have proceeded to trial. The Court should exercise its discretion to vacate Mr. Mayorga-Gutierrez's conviction on either ground.

## I.   There was an insufficient factual basis for both counts of conviction.

There was an insufficient factual basis for Mr. Mayorga-Gutierez's convictions and sentences under 8 U.S.C. §§ 1304(e) and 1306(b), and therefore his convictions must be vacated.

a. *Section 1304(e) does not require a person to carry an I-94 on their person.*

Mr. Guitierrez-Sanchez's conviction for violating § 1304(e) must be vacated for two reasons. First, there is no evidence that Mr. Mayorga-Gutierrez was issued a certificate of alien registration or alien registration receipt card because the federal government does not issue any document with that title. The government's argument that an I-94 is a certificate of alien registration is unavailing. Second, there is no evidence that Mr. Mayorga-Gutierrez did not possess an electronic version of his I-94.

First, Mr. Mayorga-Gutierrez was not issued a certificate of alien registration. Section 1304(e) requires "[e]very alien, eighteen years of age and over, shall at all times carry with him and have in his personal possession any certificate of alien registration or alien registration receipt card issued to him pursuant to subsection (d)." 8 U.S.C. §1304(e). Subsection (d) states "[e]very alien in the United States who has been registered and fingerprinted under the provisions of the Alien Registration Act, 1940, or under the

6

provisions of this chapter shall be issued a certificate of alien registration or an alien registration receipt card in such form and manner and at such time as shall be prescribed under regulations issued by the Attorney General." 8 U.S.C. §1304(d).

There is no evidence that Mr. Mayorga-Gutierrez was ever issued a "certificate of alien registration or alien registration receipt card" pursuant to § 1304(d). The government argues that the I-94 is a certificate of alien registration or alien registration receipt card. Gov't Br. 14. The Code of Federal Regulations lists twelve specific forms as permissible for registration, 8 C.F.R. § 264.1(a), and thirteen documents that serve as evidence of registration. 8 C.F.R. § 264.1(b). While an I-94 is listed as both a form of registration and proof of registration, this does not establish that an I-94 is "certificate of alien registration or an alien registration receipt card."

The purpose of the I-94 also illustrates that it is not a certificate of alien registration as the term is used in § 1304(e). *See* Nancy

Morawetz & Natasha Fernández-Silber, *Immigration Law and the Myth of Comprehensive Registration*, 48 U.C. Davis L. Rev. 141, 182-84 (2014). The I-94 is titled an "arrival departure form," and nowhere on the form does it state that it should be carried at all times. *See id.*; *see also* U.S. Customs and Border Protection "I-94 FAQs," *available at* https://www.cbp.gov/travel/international-visitors/i-94. Nor does DHS's "frequently asked questions" page on the I-94 indicate that they are to be carried on your person at all times. U.S. Customs and Border Protection "Arrival/Departure Forms: I-94 and I-94W," *available at* https://i94.cbp.dhs.gov/help.

Therefore, while an I-94 is evidence of registration, that does not equate to being a certificate of alien registration or an alien registration receipt card. In fact, the federal government does not issue any single document called, or easily understood as, a "certificate of alien registration or an alien registration receipt card." Jonathan Weinberg, *Demanding Identity Papers*, 55 Washburn L.J. 197, 199-200 (2015).

8

By its plain terms, § 1304(e) applies only if a person was actually issued a "certificate of alien registration or an alien registration receipt card." 8 U.S.C. § 1304(d). An I-94 is not a "certificate of alien registration or an alien registration receipt card." In fact, DHS seemingly recognized that no such certificate of registration existed before April 11, 2025. In March, DHS published as part of the IFR, that once an immigrant completes the new registration form, Form G-325R, a "Proof of Alien Registration" document will be posted to the immigrant's online USCIS account and will be available for download. "Alien Registration Form and Evidence of Registration," 90 Fed. Reg. 11793, 11795-96, 11800 (March 12, 2025).

Second, even if an I-94 is a "certificate of alien registration or an alien registration receipt card," there is nothing in the record establishing that Mr. Mayorga-Gutierrez was not carrying the form in its electronic version. Since 2013, most I-94s have been created electronically and not provided to the individual. The government merely argues "[a] reasonable inference from the affidavit attached to the complaint, ECF 1, was that Defendant was not in possession

9

of any form of the required documentation when he was encountered by ICE agents-electronic or paper." Gov't. Br. 14. But the complaint affidavit does not establish that Mr. Mayorga-Gutierrez did not have access to the electronic I-94 that was issued to him via a cell phone or another electronic device.

An I-94 is not a certificate of alien registration or alien registration receipt card. Mr. Mayorga-Gutierrez, therefore, had no obligation under § 1304(e) to carry his I-94 on his person. Further, even if he had a duty to carry the I-94, there is nothing in the record establish that Mr. Mayorga-Gutierrez did not have access to the electronic I-94 he was issued. The factual basis for Mr. Mayorga-Gutierrez's plea to § 1304(e) was, therefore, plainly insufficient.

b. *There was an insufficient factual basis for the guilty plea to Failure to Notify Change of Address pursuant to 8 U.S.C. § 1306(b).*

Section 1306(b) creates a Class C misdemeanor for already-registered noncitizens who fail to notify the Attorney General of an address change. 8 U.S.C. § 1306(b). The complaint merely states

10

that Mr. Mayorga-Gutierrez "was not in possession of his I-94 when encountered by ICE officers, nor has he notified the Attorney General in writing of his new address and address change within ten days." ECF Doc. No. 1. But the complaint contains no information as to how, or even if, it was determined that Mr. Mayorga-Gutierrez did not update his address. *See id.* Nor was Mr. Mayorga-Gutierrez ever asked if he read the complaint affidavit facts in Spanish and if he agreed to them. *See* Transcript of Record. He was only asked if he understood the "charge against [him] and the potential punishment." *Id.* at 8.

The complaint asserts that Mr. Mayorga-Gutierrez provided a New York address in 2022 when he first filled out his I-94. ECF Doc. No. 1. The complaint also asserts that Mr. Mayorga-Gutierrez had been living in Texas since December 2023. *Id.* But the complaint fails to allege how it was determined that Mr. Mayorga-Gutierrez did not notify DHS of any change of address. While individuals have

11

to report an address when applying for an I-94, the form itself that
is provided to immigrants does not contain the individual's address:



U.S. Customs and Border Protection "I-94 Automation," *available*
*at* https://www.cbp.gov/sites/default/files/assets/documents/2016-
Mar/i-94-automation-fact-sheet.pdf. The conclusory allegations in
the complaint do not establish a sufficient factual basis for Mr.
Mayorga-Gutierrez's plea to 8 U.S.C. § 1306(b).

  c. *The magistrate judge's acceptance of the clearly*
   *insufficient factual basis affected Mr. Mayorga-*
   *Gutierrez's substantial rights and warrants correction.*

 This obvious error affected Mr. Mayorga-Gutierrez's substantial
rights. There is a reasonable probability that he would not have

12

pleaded guilty but for the errors. There is not a factual basis for either count of conviction, and it is reasonable that Mr. Mayorga-Gutierrez would have proceeded to trial had he been aware that his conduct did not actually fall within the definition of the charged crimes.

The government argues that in "assessing the probability that a defendant would not have pleaded guilty," the court "should consider 'other factors that loomed large in the decisional calculus,' including the government's agreement to seek dismissal of other counts with higher maximum sentences." Gov't Br. 15 (quoting *United States v. Alvarado-Casas*, 715 F.3d 945, 954-55 (5th Cir. 2013)). But here, there are no such factors. Mr. Mayorga-Gutierrez entered a plea of guilty to both counts, and there is a reasonable probability that he would have proceeded to trial had he been aware that his conduct did not actually fall within the definition of either of the charged crimes.

This Court should exercise its discretion to correct the error. A guilty plea based on facts insufficient to support a conviction "colors the fundamental fairness of the entire proceeding." *United States v. Palmer*, 456 F.3d 484, 491 (5th Cir. 2006) (cleaned up). Mr.

13

Mayorga-Gutierrez's factually unsupported conviction seriously affects the integrity of judicial proceedings. Given the important constitutional rights a defendant waives by pleading guilty, reversal will promote the integrity or public reputation of judicial proceedings.

## II. The magistrate judge's admonishments were plainly insufficient under Rule 11 and it affected Mr. Mayorga-Gutierrez's substantial rights.

The government concedes that the magistrate did not inform Mr. Mayorga-Gutierrez of several trial-related rights or inform Mr. Mayorga-Gutierrez of possible immigration consequences. Gov't Br. 16-17. Nonetheless, the government argues that the error was harmless because it did not affect Mr. Mayorga-Gutierrez's substantial rights. Gov't Br. 17-18.

To reverse a conviction after a guilty plea on the ground that the court committed plain error under Rule 11, Mr. Mayorga-Gutierrez "must show a reasonable probability that, but for the error, he

14

would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). He has made that showing.

He entered a guilty plea at his first court appearance without having spoken to his counsel beforehand and without receiving many of the warnings required by Rule 11. Mr. Mayorga-Gutierrez was not advised of the elements of the offense on the record, nor was there any assertion that Mr. Mayorga-Gutierrez reviewed the complaint in a language he understands. Furthermore, Mr. Mayorga-Gutierrez is a citizen of Nicaragua who only attended school through middle school. Transcript of record at 6. There is a reasonable probability that, had Mr. Mayorga-Gutierrez been aware of his rights, he would not have pleaded guilty because he was not guilty of the charged offenses. An unknowing and involuntary guilty plea because of a Rule 11 error seriously affects the fairness, integrity, and public reputation of judicial proceedings and warrant reversal.

An unknowing and involuntary guilty plea because of a Rule 11 error seriously affects the fairness, integrity, and public reputation of a judicial proceeding A guilty plea that is based on facts precluding conviction "colors the fundamental fairness of the entire

proceeding" and warrants reversal. *Palmer*, 456 F.3d at 491-92 (quoting *Kennedy v. Maggio*, 725 F.2d 269, 273 (5th Cir. 1984)).

## CONCLUSION

For these reasons, the Court should reverse Mr. Mayorga-Gutierrez's convictions and remand for further proceedings.

Respectfully submitted.

MAUREEN SCOTT FRANCO
Federal Public Defender


/s/
Lewis B. Gainor
Supervisory Assistant Federal Public
Defender
Texas Bar. No. 24133059

16

# CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of September, 2025, I electronically filed the Brief of Defendant-Appellant with the Clerk of Court using the CM/ECF system which will send notification of such filing to Mark Frazier, Assistant U.S. Attorney, via electronic mail.

/s/
Lewis B. Gainor
Supervisory Assistant Federal Public Defender
Texas Bar. No. 24133059